**COMFAX CORPORATION and James Kuker, Appellants–Defendants/Counter–Plaintiffs,**

v.

**NORTH AMERICAN VAN LINES, INC. Appellee–Plaintiff/Counter–Defendant.**

No. 01A02–9308–CV–412.

Court of Appeals of Indiana,
Fifth District.

Aug. 11, 1994.

Ronald L. Sowers, Richard R. Bleeke, Fort Wayne, IN, for appellant.

Thomas W. Belleperche, Branch R. Lew, Hunt Suedhoff Borror & Eilbacher, Fort Wayne, for appellee.

SHARPNACK, Chief Judge.

Comfax Corporation ("Comfax") and James Kuker appeal the trial court's entry of partial summary judgment on their claim for abuse of process in favor of North American Van Lines, Inc. ("NAVL"). We affirm.

Comfax and Kuker present two issues for review, which we restate as: (1) whether the trial court erred in striking the affidavits of Kuker, David Lundy, and Michael Bireley, designated by Comfax and Kuker in opposition to NAVL's motion for partial summary judgment; and (2) whether Comfax and Kuker established a genuine issue of material fact precluding entry of partial summary judgment in favor of NAVL.

The litigation between the parties spans more than nine years. This court's decision in *Comfax v. North American Van Lines, Inc.* (1992), Ind.App., 587 N.E.2d 118, provides a statement of facts useful in understanding the background of the present appeal:

"NAVL is a large nationwide moving and storage corporation. Comfax is a smaller corporation which acts as a local distributor in the Fort Wayne area for a major computer software developer. Kuker was Comfax's president.

In late 1983 or early 1984, NAVL approached Comfax for the purposes of purchasing and providing for itself and its agents a generic computerized accounting package known as "CYMA." NAVL selected the CYMA software because it was the only software program compatible with NAVL's thirteen period accounting year. NAVL also discussed with Comfax possible development of two custom designed computer software accounting packages, a Commission Statement Reconciliation System ("CSRS"), and a Storage Billing Module ("SBM"). The two modules would be unique to the industry. Extensive efforts began to familiarize Comfax personnel with the moving and storage industry. Comfax commenced work on the two programs on oral representations by NAVL, prior to the signing of any written documents. North American Moving and Storage ("NAMS"), NAVL's local agent, was to be the system's test site.

On September 11, 1984, NAVL and Comfax signed a written contract ("Contract"). *See* Record at 33–41. Attached to it were functional specifications which had already been developed by Comfax in conjunction, cooperation, and agreement with NAVL. Both parties' legal counsel reviewed and revised the Contract, although it was originally drafted by Comfax's personnel and counsel. The Contract included projected completion dates for the programs of ninety (90) days from the Contract's execution date, and included a clause providing that a ten percent (10%) penalty fee, subtracted from the Contract price, would be assessed for each calendar month beyond the ninety day period required for completion. Kuker suggested the ninety day projected completion date, based on the progress that had been made to and including the date that the Contract was executed.

The Contract also provided that the parties would deal with each other in confidence and maintain the secrecy of all information disclosed to one another. The Contract envisioned that the programs would remain Comfax's property, and that for a period of two years following the Contract's execution, NAVL would agree to notify its agents of the availability of products and would allow Comfax to contact NAVL's agents directly and generally advertise the availability of the program's products. Thus, the Contract and the relationship between the parties essentially granted to Comfax a market for the sale of its products with the assistance of introduction to those agents by NAVL.

After the Contract was executed, Comfax continued to develop the programs. Comfax prepared drafts of design specifications, which were forwarded to NAVL for review, revision, and return. In the late fall of 1984, revision and return time from North American slowed while demands for the project's completion increased. There had been no push from North American with regard to production or completion of the modules. Previously, NAVL had not pressured Comfax to complete the project quickly. However, in October of 1984, NAVL began to demand completion. NAVL stated that if the modules were completed prior to December 27, 1984, and if the system achieved a certain level of accuracy, the modules would be presented at agent meetings in January, 1985. Record at 3136. The rec-

ord shows conflicting testimony regarding whether such agent meetings had ever been discussed with Comfax, but these meetings were not referenced in the parties' Contract.

Employees at NAVL saw the project's profit potential and wished to take advantage of the financial opportunity for NAVL. One of NAVL's divisions, Information Systems Services ("ISS"), continued to communicate with Comfax and Kuker and Comfax believed that the parties' relationship was continuing as planned. ISS, however, was planning to "stomp" and "get rid of" the Comfax Contract. Record at 2029, 1850. NAVL and NAMS continued to delay return of information Comfax sent them to review and return, which was required to complete the project. ISS's liaison with Comfax stated that he would refer NAVL agents to Comfax for sales of the generic software package. Record at 2863. Several initial sales were made, but the comprehensive referral system that Comfax had anticipated was never realized. Several times, NAVL sought information on becoming a CYMA distributor itself.

In response to NAVL's requests, Comfax devoted essentially all of its resources and manpower to the NAVL project. NAVL's letter to Comfax on December 14, 1984, stated that it would feature Comfax's products at an upcoming agent meeting provided the products had reached a state of sufficient completeness and accuracy. Record at 3136. As late as December 20, 1984, NAVL approved and returned to Comfax a set of design specifications for further action by Comfax. Record at 3239–3301.

On December 27, 1984, NAVL wrote to Kuker, informing him of NAVL's intent to terminate the Contract, citing as reasons therefor Comfax's failure to comply with the Contract regarding the employment of qualified personnel, Comfax's financial instability, and Comfax's bad faith in business dealings with NAVL. Record at 3305. About the time that NAVL notified Comfax of its decision to terminate the Contract, one of Comfax's key programmers, and the NAVL project's manager, left Comfax and shortly thereafter began to work for NAVL. The modules were not completed in December of 1984, although completion was expected in January or February of 1985.

Ultimately, the Contract was terminated in a letter from NAVL to Comfax on January 31, 1985. Record at 3307. When NAVL agents would inquire regarding Comfax's programs, NAVL responded that it did not endorse Comfax's products and would be producing a similar product itself in the near future. Record at 2050–2053. Shortly thereafter, NAVL filed suit against Comfax and Kuker alleging breach of contract and seeking to prevent the disclosure of and to recover from Comfax any and all NAVL information or documents in their possession. NAVL later established a wholly-owned subsidiary called Relocation Management Systems ("RMS"), which marketed a software package.

Following the Contract's termination and the initiation of litigation, Comfax went into financial collapse and ceased doing business. Kuker attempted suicide, was hospitalized, and commenced an extensive rehabilitation program. NAVL enlisted the services of another company, Bluebird Systems with which it completed a Commission Reconciliation System which would interface with a comprehensive computerized accounting package. After that project was completed, RMS marketed the package to NAVL's agents."

587 N.E.2d at 121–22.

NAVL filed its complaint on March 25, 1985, and moved for expedited discovery, which the trial court granted. NAVL's complaint consisted of four counts: Count I for breach of contract with respect to confidential information; Count II for misappropriation of trade secrets and confidential business information; Count III for breach of contract to provide software products; and Count IV for declaratory judgment.

On April 11, 1985, Kuker failed to appear and to produce requested documents at a scheduled deposition. On April 25, 1985, a second expedited discovery order was issued because Kuker failed to appear at the April

11 deposition. On May 13, 1985, NAVL filed a motion to compel discovery and for sanctions because Kuker failed to appear for a May 6, 1985 scheduled deposition. On May 17, 1985, the trial court ordered the deposition to be held on May 30, 1985, and ordered Kuker to produce those materials NAVL sought Comfax and Kuker to return. Kuker appeared and delivered those materials subpoenaed by NAVL.

In March of 1986, NAVL moved to dismiss its complaint without prejudice.[1] On January 26, 1987, Comfax and Kuker filed an answer, counterclaim, and request for a jury trial. On March 25, 1987, NAVL filed its answer to Comfax and Kuker's counterclaim. No further action was taken in the matter for nearly a year. On February 22, 1988, the trial court entered its own motion under Ind.Trial Rule 41(E) requesting that NAVL show cause why its claims should not be dismissed. On March 21, 1988, Comfax and Kuker responded to the trial court's request praying that the cause not be dismissed, but NAVL never responded to the trial court's request. The record does not show that the trial court acted further on its T.R. 41(E) motion. Between December of 1988 and April of 1991, the litigation continued with counsels for NAVL and Comfax making appearances and various motions and responding to those motions.

On April 8, 1991, NAVL filed a motion for partial summary judgment on Comfax and Kuker's counterclaims for punitive damages, tortious breach of contract, tortious interference with business relationships, fraud, and imposition of a constructive trust. On May 8, 1991, the trial court granted NAVL's motion for partial summary judgment. Comfax and Kuker appealed the judgment to this court which remanded the case to the trial court for trial on Comfax and Kuker's theories of breach of contract, conversion, and punitive damages. *Comfax*, 587 N.E.2d at 129.

On December 16, 1992, NAVL moved to dismiss Kuker from the action. On January 22, 1993, the trial court granted NAVL's

motion to dismiss Kuker. On January 26, 1993, with trial set to commence, Comfax and Kuker moved for leave to amend their counterclaims to state a claim for abuse of process, which the trial court granted. On March 16, 1993, NAVL answered the amended counterclaim. On March 30, 1993, NAVL filed a motion for partial summary judgment on the abuse of process counterclaim. On May 11, 1993, the trial court granted the motion, finding that "[t]here is no evidence of any kind that there had been a misuse or misapplication of the legal process utilized to achieve an end other than what the process was designed to accomplish." Record, p. 612. This appeal followed.

■ When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court: We may only consider those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434; Ind.Trial Rule 56(C), (H). We may not reverse summary judgment orders on the ground that there is a genuine issue of material fact unless the material facts and relevant evidence were specifically designated to the trial court. *Id.* The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Id.* All properly asserted facts and reasonable inferences should be resolved against a moving party. *Indiana Board of Public Welfare v. Tioga Pines* (1993), Ind., 622 N.E.2d 935, 940.

I.

Comfax and Kuker first argue that the affidavits of Kuker, David Lundy, and Michael Bireley offered in opposition to NAVL's motion for partial summary judgment should have been considered by the trial court when ruling on NAVL's motion for

---

**1.** The record does not reflect this action, but NAVL, Comfax, and Kuker state in their briefs that NAVL had in fact moved to dismiss the action against Comfax and Kuker in March of 1986.

partial summary judgment. The trial court found, however, that the affidavits did not comply with the requirements of T.R. 56(E) in that they were "all either immaterial or conclusionary [sic] failing thereby to state facts admissible in evidence." Record, p. 613. The trial court further noted that

"[e]ven if considered, however, the affidavits do not create a genuine issue of material fact because, as a matter of law, if [NAVL's] acts in the conduct of the lawsuit were procedurally and substantively proper under the circumstances (and the Court has so found), [NAVL's] intent is immaterial and irrelevant."

Record, p. 613.

■ Affidavits which support and oppose motions for summary judgment must be made on personal knowledge, must affirmatively show that the affiant is competent to testify as to the matters covered, and must set forth facts as would be admissible in evidence. T.R. 56(E); *Whitaker v. St. Joseph's Hospital* (1981), Ind.App., 415 N.E.2d 737, 743. Mere assertions of conclusions of law or opinions in an affidavit will not suffice. *Rubin v. Johnson* (1990), Ind.App., 550 N.E.2d 324, 327. Supporting and opposing affidavits must present admissible evidence that should follow substantially the same form as though the affiant were giving testimony in court to comply with the requirements of T.R. 56(E). *Coghill v. Badger* (1982), Ind.App., 430 N.E.2d 405, 406. Upon review, we determine whether the trial court erred in striking an affidavit or portions thereof. *Pathman Constr. Co. v. Drum–Co Eng'g. Corp.* (1980), Ind.App., 402 N.E.2d 1, 9.

In its complaint, NAVL states that it sued Comfax and Kuker to recover confidential and sensitive materials belonging to NAVL. Kuker, Lundy, and Bireley assert in their affidavits, however, that NAVL initiated the litigation in an effort to leverage Comfax and Kuker into a position that would prevent Comfax from completing the project and that would drain Comfax and Kuker financially and emotionally. They therefore argue that NAVL purposely used process for a purpose other than for which it is intended.

■ In a common law abuse of process claim, the party asserting abuse of process must show an ulterior motive and use of process that would not be proper in the normal prosecution of the case. *Central Nat. Bank of Greencastle v. Shoup* (1986), Ind. App., 501 N.E.2d 1090, 1095. "A regular and legitimate use of process, though with an ulterior motive or bad intention is not malicious abuse of process." *Brown v. Robertson* (1950), 120 Ind.App. 434, 92 N.E.2d 856, 858.

Comfax and Kuker contend that the three affidavits satisfied the requirements of T.R. 56(E) because the affiants presented sufficient facts admissible as evidence to show that there existed a genuine issue of material fact regarding whether NAVL acted with an ulterior motive and attempted to use the legal process for purposes other than that for which it is intended. We disagree. We find that the affiants failed to set forth evidence showing that NAVL used process in a way that was not proper in the normal prosecution of the case. The affiants have merely asserted the conclusion that NAVL committed an abuse of process and stated their opinions regarding the confidentiality and sensitivity of the materials Kuker returned to NAVL at the May 30, 1985 deposition.

■ In his affidavit, Kuker stated that the materials he returned were "nothing of significance" and that "[t]hey did not contain any competitively sensitive data." He further stated that "[n]one of the documents to my knowledge were stamped 'proprietary' or 'confidential', nor were they treated as such by NAVL." Record, p. 499–500. Comfax and Kuker argue that a lay witness' testimony, such as Kuker's, as to ultimate fact issues is admissible. *See Bell v. Horton* (1980), Ind.App., 411 N.E.2d 648, 650. As to the ultimate issue of whether NAVL abused process, however, we find that Kuker presented only inadmissible conclusions and opinions unsupported by facts.

■ Lundy is an intellectual property attorney who represented Comfax in its dealings with NAVL in 1984 and 1985. Comfax and Kuker contend that as a qualified attorney, Lundy's legal opinion as to an ultimate issue in the case is admissible. *See Willsey v. Peoples Federal Savings & Loan* (1988),

Ind.App., 529 N.E.2d 1199, 1205. In their brief, Comfax and Kuker argue that Lundy provided his conclusions "based upon his experience as an intellectual property lawyer and based upon his observations of and participation in the events he describes." Appellant's brief, p. 27. In *Coghill, supra,* this court addressed a similar situation. The court held that the affidavit of Runnells, Coghill's attorney, did not comply with the requirements of T.R. 56(E) because the attorney did not present facts that would be admissible in evidence to satisfy the two-pronged test of the statute at issue. 430 N.E.2d at 406. Runnels' affidavit was "insufficient to generate genuine issues as to the material facts of waiver and estoppel." *Id.* Likewise, in the instant case Lundy's affidavit was insufficient to raise genuine issues regarding whether NAVL abused process. In his affidavit, Lundy opined that "NAVL initiated this litigation, not for a legitimate purpose, but instead as a 'preemptive strike' seeking to stave off claims by Comfax and Kuker and seeking to take the offensive against Kuker in an effort to financially and emotionally bankrupt him and his small company." Record, p. 510. Lundy further stated that the "documents which NAVL sought to have returned, however, were not in fact all that confidential or sensitive." Record, p. 511. Lundy did not present any facts which support his conclusions and opinions; therefore, his affidavit did not comply with the requirements of T.R. 56(E).

■ In his affidavit, Bireley stated that he worked for NAVL in 1984 and 1985 as the Director of Agency Relations. He later became Vice–President and General Manager of RMS. Bireley saw a need for a computer microsystems accounting package and, unaware of the Comfax contract, presented his own software plan to his superior, who subsequently ordered that NAVL seek to replace the NAVL/Comfax plan with Bireley's plan and terminate the NAVL/Comfax contract. Bireley stated that NAVL instituted litigation against Comfax and Kuker "ostensibly to prevent Comfax from disclosing confidential information and to secure the return of certain NAVL documents from Comfax." Record, p. 507. Bireley further stated that "at the time the litigation was instituted against

Comfax and Kuker, I needed nothing from Comfax. I had all of Comfax's work product...." Record, p. 507. Bireley concluded that the

> "litigation was initiated and maintained as an economic weapon. NAVL knew that Comfax's resources were minimal and felt that the best way to keep Comfax from completing the project, doing any marketing or, for that matter, making claim against NAVL, was to keep Comfax and Kuker busy defending themselves instead."

Record, p. 508.

■ We agree with Comfax and Kuker that the trial court erred in striking Bireley's affidavit because the affidavit contains facts that show that a genuine issue of material fact existed regarding whether NAVL had an ulterior motive for bringing the lawsuit: NAVL intended to prevent Comfax from completing the project. Bireley's affidavit, however, does not present admissible facts that raise a genuine issue of material fact regarding whether NAVL used process in a way not proper in the normal prosecution of the case, and Comfax and Kuker otherwise failed to designate evidence to the trial court that shows that NAVL used process as such.

The contract between the parties in pertinent part provided as follows:

"5. NAVL and Comfax agree to receive the information of the other in confidence and to keep in confidence and in secrecy all information disclosed or transmitted to the other, whether by writings or other documents, orally, or by inspection of apparatus or structures or writings or other physical specimens embodying, disclosing or suggesting said information, and the receipient [sic] agrees not to reveal or divulge any of said information to third parties or to permit third parties to inspect any of the apparatus or structures or writings or other physical specimens embodying, disclosing or suggesting any portion of the information, without the prior written consent of the owner of such information....

\*    \*    \*    \*    \*    \*

NAVL and Comfax acknowledge that the provisions of this Agreement imposing obligations upon the other to maintain the confidentialty [sic] of the other's information are fair and reasonable and are reasonably required for the protection of the other. NAVL and Comfax agree that any violation of these provisions is likely to cause damage to the other which may not be adequately compensated by money damages or the provisions of this Agreement and may be restrained by process issued out of Court [sic] of competent jurisdiction in addition to the other remedies herein provided or provided by law."

Record, pp. 35–37. This paragraph of the contract and Bireley's statement that NAVL sued to prevent dissemination of confidential information and to secure the return of certain NAVL documents contradicts his assertion that the litigation was initiated by NAVL as an economic weapon to neutralize Comfax's efforts to complete the contract and bring a lawsuit against NAVL. Therefore, we find that the trial court's error in striking Bireley's affidavit was harmless.

We therefore find that Kuker's and Lundy's affidavits do not satisfy the requirements of T.R. 56(E) for either element of a claim for an abuse of process. Although Bireley's affidavit does satisfy the requirements of T.R. 56(E) regarding whether NAVL had an ulterior motive, we find that the trial court's error in striking the affidavit was harmless because Bireley's affidavit fails to set forth facts that raise a genuine issue as to whether NAVL used process in a way that was not proper in the normal prosecution of the case, and Comfax and Kuker otherwise failed to designate evidence to the trial court that proves such improper use of process.

## II.

■ Comfax and Kuker next argue that NAVL's conduct raised a genuine issue of material fact as to whether NAVL acted with an ulterior motive and sought to use process for a purpose other than for which it is intended. They contend that regardless of whether the trial court considered the affidavits, the pleadings by themselves demonstrate NAVL's abuse of process. We disagree.

Although Comfax and Kuker's memorandum in opposition to NAVL's motion for partial summary judgment alleges that NAVL's conduct was an abuse of process, the designated evidence in the record leads us to conclude otherwise. The evidence shows that NAVL employed the legal process to secure the return of its confidential materials from Comfax and Kuker as follows: (1) filing a complaint; (2) seeking discovery of information; (3) requesting production of the confidential materials in Kuker's possession; and (4) moving for expedited discovery to procure the immediate return of the materials.

In Counts I and II, NAVL sued Comfax and Kuker for breach of contract with respect to confidential materials and misappropriation of trade secrets and confidential business information. NAVL sought to have Comfax and Kuker immediately enjoined from using or disclosing the confidential materials, to have Comfax and Kuker return the materials, and to have the trial court award NAVL any compensatory damages due to Comfax's improper use of these materials. In Count III, NAVL sued for breach of contract to provide software products, seeking compensation for costs incurred in performing the contract. In Count IV, NAVL sued for declaratory judgment, requesting that the trial court interpret the respective rights of the parties under the contract.

NAVL moved for expedited discovery to recover its materials from Comfax and Kuker and to prevent their dissemination. Once Kuker returned the materials in his possession, NAVL took no further action regarding its claim until it moved to dismiss the complaint without prejudice in March of 1986. We find no evidence raising a genuine issue of material fact regarding whether this use of process was anything other than proper.

Comfax and Kuker argue that *Archem, Inc. v. Simo* (1990), Ind.App., 549 N.E.2d 1054 is strikingly similar to the instant case. In *Archem,* Simo signed an independent distributorship agreement with Archem to sell Archem's products. *Id.* at 1057. At the time he agreed to sell for Archem, Simo had a

contract with a competing business, NCH, which included a covenant not to compete. *Id.* The head of Archem agreed to pay any legal fees Simo incurred in defending any lawsuit NCH might bring against Simo regarding the restrictive covenant. *Id.* Thereafter, ownership of Archem was transferred to a new owner, Share. *Id.* NCH brought suit against Simo and Archem based on the covenant not to compete. *Id.* Disputes between Simo and Archem arose regarding the contract, with Share claiming that the agreement's conditions had been changed by a new agreement with Simo, which Simo denied. *Id.* Simo had not signed any written contract to sell exclusively for Archem. *Id.*

After the litigation with NCH was settled, Share determined that he had paid over $31,-000.00 in legal fees for Simo. *Id.* The record showed that Share had made a practice of bringing litigation against former salespeople who left the company to induce them to stay. *Id.* Simo ordered a customer a product from another distributor owned by Share. *Id.* When Share's officers heard of this, they ordered an Archem executive to prevail upon Simo to sign a five year contract or face a lawsuit demanding return of the $31,000.00 in fees that Share had paid on Simo's behalf. *Id.* Share wanted to make an example of Simo if he did not desist from selling competitors' products. *Id.* Upon learning that Simo had continued to sell competitors' products, Share refused to fill Simo's orders. *Id.* When Simo refused to sign a five-year contract, Share sued him for misrepresentation, unjust enrichment, and breach of contract. *Id.* Simo counterclaimed alleging, *inter alia,* abuse of process. *Id.* Simo prevailed at trial on three claims including the abuse of process claim. *Id.*

On appeal, this court held that the record contained sufficient evidence to support Simo's abuse of process claim. *Id.* The record showed that Archem filed suit to intimidate Simo into signing a new contract on more restrictive terms than his original agreement. *Id.* In support of the evidence showing an ulterior motive with respect to Simo, Simo introduced evidence that Archem frequently filed suit against its salespeople to keep them employed with the company, and that the tactic would financially drain the defendants. *Id.*

In the instant case, NAVL gave its materials and documents to Comfax and Kuker during the term of the contract. After the termination of the contract and at the time the lawsuit was filed, Comfax and Kuker retained possession of NAVL's materials and documents. The written agreement provided that information exchanged between NAVL and Comfax was received in confidence and was to be kept in confidence. Moreover, they agreed that the obligation to maintain such confidentiality was fair and reasonable, required for the protection of the other, and that any violation of these provisions could by restrained by use of the legal process. The designated evidence shows that NAVL sued for breach of contract to recover its confidential materials and lost expenses under the contract, and that NAVL no longer pursued litigation once its materials were returned. Therefore, unlike Archem's lawsuit against Simo, NAVL's lawsuit was not frivolous and unjustified.[2]

We find therefore that Comfax and Kuker have failed to show that NAVL used process in a way that was not proper in the

---

2. The dissent believes that *Archem* is indistinguishable from the instant case in that "there are numerous factual assertions [presented in the affidavits showing] that both Kuker and Comfax were financially and otherwise adversely affected by NAVL's suit." Dissent's op., p. 487. The dissent finds that the facts alleged in the affidavits are sufficient to permit a trier of fact to conclude that NAVL was motivated solely by malice in filing its lawsuit and that the lawsuit was filed to recover documents that were neither confidential nor sensitive in nature nor had any competitive value. As the dissent observes, the difference between fact and opinion is one of degree. As a matter of degree, we find that the affidavits in the instant case present no material facts showing that NAVL's use of process was improper. Rather, the affidavits present only opinions and conclusions as to the confidentiality and sensitivity of the materials NAVL sought and obtained from Kuker. If anything, the affiants' opinions and conclusions infer that some of the documents retrieved from Kuker were sensitive and confidential, supporting NAVL's use of process to reclaim its property from Kuker and Comfax.

normal prosecution of the case.[3]

Comfax and Kuker further argue that *Lindsay v. Jenkins* (1991), Ind.App., 574 N.E.2d 324, should guide this court in determining that summary judgment is precluded by the existence of a fact question as to whether NAVL had an ulterior purpose in filing and maintaining the action against Comfax and Kuker. In *Lindsay*, the city mayor, Jenkins, filed a lawsuit against Lindsay. 574 N.E.2d at 324. Lindsay prevailed at trial and on appeal; this court upheld the trial court's decision finding that Jenkins failed to demonstrate injury due to Lindsay's conduct. *Id.* Lindsay immediately filed a complaint alleging abuse of process by Jenkins, contending that Jenkins' lawsuit was frivolous, groundless, and unreasonable. *Id.* The trial court granted Jenkins' motion for summary judgment, finding that Jenkins' defense of reliance on advice of counsel was a complete defense. *Id.* at 326.

In Lindsay's response opposing Jenkins' motion for summary judgment, Lindsay filed an affidavit by Stengel, the board of zoning appeals attorney, to support Lindsay's claim that Jenkins had an ulterior motive for filing the prior lawsuit. *Id.* Stengel averred that "Jenkins had told him that although Lindsay may have immunity, it would cost him more money to defend the lawsuit than it would cost Jenkins to bring the lawsuit." *Id.* This court reversed summary judgment, finding that a genuine issue of material fact existed as to whether Jenkins had an ulterior motive in filing the former lawsuit against Lindsay. *Id.*

The *Jenkins* court did not address whether a genuine issue of material fact existed regarding Jenkins' use of process for a purpose other than for which it is intended. Stengel's affidavit, however, provided facts that show the existence of such a material fact: Jenkins brought a frivolous suit because he intended for Lindsay to incur legal expenses in defending the lawsuit when he knew that Lindsay likely was immune to the lawsuit.

In the instant case, Comfax and Kuker did not designate any evidence to show that NAVL had used process for a purpose other than to recover its confidential materials. The designated evidence in the record reveals that NAVL used the legal process for the purpose of recovering materials belonging to NAVL which were in the possession of Comfax and Kuker and that once those materials were returned, NAVL did not further actively press its lawsuit against Comfax and Kuker.

▮ In *Groen v. Elkins* (1990), Ind.App., 551 N.E.2d 876, this court held that a party's intent is irrelevant where his acts are procedurally and substantively proper under the circumstances. 551 N.E.2d at 879. We find that NAVL's acts were procedurally and substantively proper under the circumstances. Therefore, their possible ulterior motives are irrelevant. There is no liability for use of the legal process unless it has been used to achieve an end other than one which the process was designed to accomplish. *Central Nat. Bank of Greencastle, supra*, at 1095; *Barrow v. Weddle Bros. Construction* (1974), 161 Ind.App. 601, 316 N.E.2d 845, 854. Comfax and Kuker have failed to show that NAVL used process in a way that was not proper in the normal prosecution of the case, and therefore whether NAVL's intent was improper is irrelevant.

For the reasons stated above, we affirm the decision of the trial court.

AFFIRMED.

3. Comfax and Kuker contend that "evidence exists which demonstrates that NAVL's conduct toward Comfax and Kuker is not unlike the conduct of Archem in that NAVL has in other instances entered into agreements with other entities, become disenchanted with those entities, withheld information, services or orders from those entities to financially drain them and ultimately engaged in litigation with those entities to economically bleed them." Appellant's brief, p. 32. Comfax and Kuker refer to evidence of a Florida case which the trial court deemed inadmissible when it granted NAVL's motion in limine, preventing Comfax and Kuker from offering evidence at trial of this and other cases in which NAVL was involved. We will not consider these cases because Comfax and Kuker did not designate evidence of these cases to us in their response to NAVL's motion for partial summary judgment. *See* T.R. 56(C). We restrict our review to that evidence in the record designated to the trial court.

GARRARD, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The trial court's exclusion of the three affidavits was premised upon alternative grounds, i.e., that the affidavits were "either immaterial or conclusory". Record at 610–613. However, the court acknowledged that if the affidavits contained assertions of fact as opposed to mere conclusions, its summary judgment ruling was probably erroneous. In other words, the trial court itself stated that the stricken affidavits were the crucial issue with respect to the propriety of the partial summary judgment.

Although both the Kuker and Lundy affidavits do contain some conclusory statements, both also contain statements of fact relevant to the matters in issue.

The distinction between statements of fact and conclusions, as contained in affidavits for summary judgment purposes, is not easily defined. As stated in 1 *McCormick on Evidence* § 11, at 42–43 (4th ed. 1992):

"There is no conceivable statement however specific, detailed and 'factual,' that is not in some measure the product of inference and reflection as well as observation and memory.... The difference between so-called 'fact,' then, and 'opinion,' is not a difference between opposites or contrasting absolutes, but a mere difference in degree with no recognizable line to mark the boundary."

Viewed in light of the surrounding circumstances, the facts alleged in the three affidavits are sufficient to permit a trier of fact to conclude that NAVL was motivated solely by malice in filing its lawsuit. The alleged facts support the conclusion that NAVL filed suit to hinder Comfax in opposing NAVL's efforts to replace Comfax with a less costly supplier or an in-house programmer. A trier of fact might well conclude that filing a lawsuit to

recover documents that had no competitive value and that were not confidential or sensitive constitutes abuse of process.

Kuker's affidavit states as fact that Comfax's program had period accounting capability 1 to 13 and was not limited to a single 13–period accounting system. It further states that NAVL knew the capability was not limited to a 13–period system. The affidavit also states as fact that NAVL knew that neither Comfax nor Kuker were financially able to oppose NAVL's lawsuit. The affidavit contains additional facts which would permit an inference that the documents sought by NAVL were neither commercially sensitive nor confidential. Finally, the affidavit details NAVL's attempts to expedite discovery and seek sanctions which had an intimidating effect upon Kuker and caused him extreme emotional and financial distress. Kuker's affidavit contains many statements of fact which support his conclusions about NAVL's knowledge, motivation and purpose.

In his affidavit, Lundy alleges as fact that NAVL refused to provide information essential to Comfax's ability to comply with the original time schedule. Lundy also states that he prepared a lawsuit against NAVL in early January 1985, and that NAVL filed its own suit in March 1985. Although Lundy expressed a speculative "expert opinion" that NAVL's "preemptive strike" was motivated by a strategy that the "best defense is a good offense," (Record at 510) the surrounding facts and circumstances would permit just such a conclusion.

Lundy, as an attorney with particular expertise in the area of intellectual property law, was qualified to give his opinion as to the competitive, sensitive, or confidential nature of the documents sought to be recovered by NAVL and as to whether such information was required by NAVL in its business. *See Jordan v. Deery* (1993) Ind., 609 N.E.2d 1104.[1] Lundy's affidavit, in my view, was

---

1. The majority alludes to the fact that the parties had agreed to maintain the confidentiality of the documents which were ultimately returned by Kuker to NAVL. Op. at 484. The existence of such an agreement and a belief on the part of both, at the outset, that all documents exchanged should receive confidential handling does not mean that each and every document provided Comfax was in fact sensitive or confidential. At most, it gives rise to a dispute as to the inferences to be drawn from the facts. Accordingly,

replete with assertions of fact which present genuine issues of fact regarding NAVL'S motivation in filing and maintaining its lawsuit.

The majority recognizes that Bireley's affidavit was erroneously stricken. However, the majority finds the error harmless, holding that the alleged facts do not permit an inference that NAVL "used process [the filing and maintenance of the lawsuit] in a way not proper in the normal prosecution of the case...." Op. at 482. This rationale presupposes that the lawsuit had some basis in fact and law. If the documents sought in NAVL's lawsuit were demonstrably insignificant, the suit might well be deemed an abuse of process.

The majority seeks to draw some meaningful distinction which militates against application of *Archem, Inc. v. Simo* (1990) 1st Dist. Ind.App., 549 N.E.2d 1054 to the facts before us. I see no distinction. In fact, the result obtained in *Archem* is even more clearly dictated here. In *Archem,* the plaintiff "did

not capitulate to the [abuse of process] tactic." Even so, the First District held that it is not essential to a successful abuse of process claim that a "suit filed for an improper purpose must effectuate the purposes for which it was intended." 549 N.E.2d at 1062. In the case before us there are numerous factual assertions that both Kuker and Comfax were financially and otherwise adversely affected by NAVL's suit.

In my view and in light of the factual allegations contained in the three affidavits, the holding of *Archem* should be followed here. I would reverse and remand with instructions to deny NAVL's motion for partial summary judgment.

summary judgment based on the agreement

would be inappropriate.