Peter **DVORAK** and Gigi Larmour–Goldin, Appellants–Plaintiffs,

v.

Dale A. **CHRIST**, Appellee–Defendant.

No. 49A02–9705–CV–293.

Court of Appeals of Indiana.

March 16, 1998.

Rehearing Denied May 27, 1998.

Michael L. Carmin, Robert T. Drew, Andrews, Harrell, Mann Chapman & Coyne, P.C., Bloomington, for Appellants–Plaintiffs.

Michael J. Lewinski, Michael A. Swift, Ice Miller Donadio & Ryan, Indianapolis, for Appellee–Defendant.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Peter Dvorak and Gigi Larmour–Goldin appeal a order of the trial court order denying their motions for partial summary judgment and granting summary judgment in favor of Dale Christ on their complaint for breach of contract.

We affirm.

### ISSUES

I.   Did the trial court err in granting Christ's motion for summary judgment and in denying Dvorak and Larmour–Goldin's motions for partial summary judgment?

II.   Did the trial court err in striking portions of Larmour–Goldin's affidavit?

### FACTS

Dale Christ owned a condominium in Monroe County that he wanted to sell. James and Carolyn Helguson had expressed an interest in the property but had not made an offer which was acceptable to Christ. On February 7, 1995, Christ entered into a listing agreement for the property with Gigi Larmour–Goldin, a licensed real estate broker. The listing agreement provided for a 5% sales commission to Larmour–Goldin. However, the listing agreement contained an exclusion clause, which provided that the "[b]roker shall receive no professional service fee in the event the property is purchased by the Helguson family . . . ." (R. 145, 147).

On February 17, the Helgusons offered Christ $500,000 for the property. Christ then relayed the Helgusons' offer to Larmour–Goldin, who requested an opportunity to locate a buyer who could pay more for the property. Later that afternoon, Larmour–Goldin notified Christ that Peter Dvorak was interested in the property. On that same date, Dvorak made an offer to purchase the real estate for $564,000 by tendering to Christ a purchase agreement prepared by Larmour–Goldin. Dvorak and Christ executed the purchase agreement and attached addenda.

Addendum No. 1, which governs the time and the method of payment of the purchase price, provides three alternate methods of payments: cash, an assumption, or a new mortgage. The parties agreed that Dvorak would pay the purchase price of the property by obtaining a new mortgage. The provision regarding the new mortgage provides in pertinent part as follows:

> Completion of this transaction shall be contingent upon the Purchaser's ability to obtain a (Conventional) first mortgage loan for $451,600.00 payable in not less than 20 years with interest not to exceed 10½% per annum. Purchaser shall pay all cost of obtaining financing including discount points and/or origination fee not to exceed 1% . . . .

(R. 24). Both parties placed their initials next to this provision. Regarding the time for obtaining financing, the addendum provided as follows:

> Purchaser agrees to make application for any financing necessary to complete this transaction, or for approval to assume the unpaid balance of the existing mortgage within 10 days after the acceptance of this Purchase Agreement and to make a diligent effort to obtain financing in cooperation with the Broker and Seller. No more than 30 days after the date of application shall be allowed for obtaining favorable commitment(s) or mortgage assumption approval. If a commitment or approval is not obtained within the time specified above, this Agreement shall terminate unless an extension of time for this purpose is mutually agreed to in writing.

(R. 141). The purchase agreement also states that time is of the essence and that "[t]ime periods specified in this Agreement shall expire at midnight on the date stated unless the parties agree in writing to a different date or time." (R. 140). Consequently, the latest possible date in which Dvorak could obtain a favorable loan commitment as specified by the agreement was March 29.

In accordance with the terms of the purchase agreement, Dvorak attempted to procure a mortgage loan at Bank One. On March 29, Larmour–Goldin represented to Christ that there had been a verbal loan

commitment by Bank One in an unspecified amount. Although Bank One notified Dvorak in a letter that it had approved a loan to Dvorak in the amount of $100,000, Bank One had not provided him with either a verbal or written commitment for $451,600 by the close of business.[1] Christ and Dvorak did not execute any written agreement to extend the deadline to obtain the specified financing.

On March 31, Dvorak entered into an agreement to resell the property to the Helgusons at a purchase price of $587,500. That same day, Christ contacted Bank One and learned that the Loan Committee had not yet met regarding a proposed loan to Dvorak for the purchase of the property.

On April 2, Christ sent Larmour–Goldin a letter notifying her that the purchasing agreement "self-terminated" as a result of Dvorak's failure to secure financing commitment and authorizing Larmour–Goldin to put the property back on the market. The following day, Dvorak wrote a letter to Larmour–Goldin stating that he had performed the conditions of the purchase agreement. Dvorak's letter also stated that he "had received two commitments for financing by the date stipulated in our contract" and was prepared to proceed with closing. (R. 373). On April 6, Dvorak's counsel sent a letter to Christ's counsel stating that his "client strongly believes that he has either complied with or waived any contingency of compliance with regard to closing the transaction and obtaining financing." (R. 236). Christ refused to proceed to closing with Dvorak, and on April 25, sold the property to the Helgusons.

On May 9, 1995, Dvorak and Larmour–Goldin filed a complaint for breach of contract against Christ. Dvorak and Larmour–Goldin filed separate motions for partial summary judgment. Christ filed a motion for summary judgment and an opposition to Dvorak's and Larmour–Goldin's partial summary judgment motions. The trial court denied Dvorak's and Larmour–Goldin's motions for partial summary judgment and entered summary judgment in favor of Christ.

*DECISION*

## I. *Summary Judgment*

Dvorak and Larmour–Goldin contend that the trial court erroneously granted summary judgment in favor of Christ and denied their motions for partial summary judgment. When reviewing a grant of summary judgment, we use the same standard as the trial court: whether the pleadings and evidence demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Miller by Miller v. Memorial Hosp. of South Bend, Inc.*, 679 N.E.2d 1329, 1330 (Ind.1997); Ind.Trial Rule 56(C). The appellant bears the burden of proving the trial court erred in determining that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). A genuine issue of material fact exists when facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct.App.1991).

### A. *Dvorak*

Dvorak contends that he was entitled to summary judgment because Christ breached the purchase agreement when Christ failed to convey the property to him. Christ responds that he did not breach the purchase agreement which terminated on March 29, 1995. We agree with Christ.

When the language of a written contract is not ambiguous, its meaning is a question of law for which summary judgment is particularly appropriate. *Fetz v. Phillips*, 591 N.E.2d 644, 647 (Ind.Ct.App.1992). In interpreting an unambiguous contract, we

---

1. In their Statement of Facts, the appellants state that on March 29, "Dvorak expressed his willingness and ability to proceed with closing." Appellants' Brief at 7. However, none of the pages referenced by the appellant suggest that Dvorak communicated to either Christ or Goldin his willingness and ability to proceed with closing on this date.

give effect to the intentions of the parties as expressed in the four corners of the instrument. *Hyperbaric Oxygen Therapy Systems, Inc. v. St. Joseph Medical Center of Ft. Wayne, Inc.*, 683 N.E.2d 243, 247 (Ind.Ct. App.1997), *trans. denied.* Clear, plain, unambiguous terms are conclusive of that intent. *Id.* We will neither construe clear and unambiguous provisions nor add provisions not agreed upon by the parties. *Id.*

Here, the purchase agreement provisions are clear and unambiguous. The language of the purchase agreement clearly provides that completion of the transaction was contingent upon Dvorak's ability to obtain a conventional first mortgage loan for $451,600. The parties do not dispute that, under the purchase agreement, the latest possible date for Dvorak to obtain a favorable loan commitment was March 29. The purchase agreement also clearly states that "[i]f a commitment . . . is not obtained within the time specified above, this Agreement shall terminate unless an extension of time for this purpose is mutually agreed to in writing." (R. 24).

Christ correctly asserts that the foregoing language made the purchase agreement subject to both a condition precedent and a condition subsequent. A condition precedent is either a condition which must be performed before the agreement of the parties shall become a binding contract, or it may be a condition which must be fulfilled before the duty to perform an existing contract arises. *Worrell v. WLT Corp.*, 653 N.E.2d 1054, 1057 (Ind.Ct.App.1995), *trans. denied.* A condition subsequent, on the other hand, has been defined as a condition which, if performed or violated, as the case may be, defeats the contract. *Knauf Fiber Glass, GmbH v. Stein*, 615 N.E.2d 115, 127 (Ind.Ct.App.1993), *summarily aff'd in relevant part*, 622 N.E.2d 163 (Ind.1993).

The duty of either Dvorak or Christ to complete the contract was contingent upon Dvorak's ability to obtain a first mortgage loan for $451,600. This is the condition precedent. Under another provision of the purchase agreement, the contract was to terminate and the rights of both parties were to dissolve upon Dvorak's failure to obtain the necessary financing prior to March 30. This was the condition subsequent.

The record indicates that Dvorak never demonstrated to Christ that he had obtained the specified financing prior to March 30. In fact, although Dvorak repeatedly asserts that he was "ready, willing and able" to purchase the property, he does not contend that he obtained either a first mortgage loan for $451,600 or timely satisfied the condition subsequent. Christ never agreed in writing to an extension of time for obtaining the required financing commitments beyond the March 29 deadline. Because the condition subsequent was violated, the purchase agreement terminated by its own terms as of March 30. *See Knauf Fiber Glass, GmbH*, 615 N.E.2d at 129. Therefore, Christ did not breach the purchase agreement by failure to close on the property after that date.

Nevertheless, Dvorak contends that the trial court erred in granting Christ's summary judgment motion because the evidence showed that Dvorak waived the financing contingency clause set forth in the agreement. Even assuming Dvorak could waive this provision, his argument must fail. Our review of the record reveals that Dvorak did not communicate to Christ, either orally or in writing, an express waiver of the financial condition *prior to* the termination of the contract on March 30. Although Dvorak contends in his reply brief that his waiver occurred prior to March 30, he does not explain how or when he effectuated such a waiver. Dvorak does not allege, nor do we find, that the conduct of the parties constituted waiver of the provision prior to termination of the purchase agreement. Importantly, Dvorak has not cited any cases which would permit him to revive the purchase agreement by waiving the financing condition *after* the purchase agreement terminated. We therefore find that the trial court properly entered summary judgment in favor of Christ on Dvorak's complaint for breach of contract.

### B. *Larmour–Goldin's Commission*

Larmour–Goldin's claim that she is entitled to a 5% commission under a listing contract is based upon her contention that

Christ breached the purchase agreement by refusing to convey the property to Dvorak. However, because we have concluded that Christ did not breach the purchase agreement and that the contract terminated by its own terms without a sale of the property, Larmour–Goldin was not entitled to the commission under the listing contract. The trial court properly granted summary judgment in favor of Christ.

## II. *Larmour-Goldin's Affidavit*

Dvorak and Larmour–Goldin contend that the trial court erred in striking two paragraphs contained in Larmour–Goldin's affidavit. The two paragraphs at issue provide:

.9. Financing contingency clauses are included by a buyer so that he can be released from his obligation to purchase the real estate if he is unable to secure the necessary financial assistance for payment of the purchase price.

10. It is the usual and customary practice of the real estate industry in Indiana and specifically in Monroe County, Indiana to include financing contingency clauses in an offer to purchase real estate for the buyer's exclusive benefit.

(R. 422).

 Affidavits which support and oppose motions for summary judgment must be made on personal knowledge, must affirmatively show that the affiant is competent to testify as to the matters covered, and *must set forth facts as would be admissible in evidence.* Ind.Trial Rule 56(E); *Comfax Corp. v. North American Van Lines, Inc.,* 638 N.E.2d 476, 481 (Ind.Ct.App.1994). Mere assertions of conclusions of law or opinions in an affidavit will not suffice. *Id.* Further, affidavits must present admissible evidence that should follow substantially the same form as though the affiant were giving testimony in court to comply with the requirements of T.R. 56(E). *Id.*

Here, the language of the purchase agreement is clear and unambiguous. Where the terms of a contract are clear and unambiguous, they are conclusive and we will not construe the contract or consider extrinsic evidence but merely apply the contractual

provisions. *Eckart v. Davis,* 631 N.E.2d 494, 497 (Ind.Ct.App.1994). Therefore, the extrinsic evidence contained in the two paragraphs of Larmour–Goldin's affidavit were not facts as would be admissible in evidence. Further, paragraph nine merely states a legal conclusion. Therefore, the trial court did not err in striking the inadmissible evidence from the affidavit.

We affirm.

HOFFMAN, J., concurs.

GARRARD, J., concurs in result.