G. Clark HARRISON, Appellant–
Plaintiff,

v.

Carl E. THOMAS and Lois L. Thomas,
Appellees–Defendants.

No. 89A05–0006–CV–237.

Court of Appeals of Indiana.

March 6, 2001.

978

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Attorney for Appellant.

Terry O'Maley, Boston Bever Klinge Cross & Chidester, Richmond, IN, Attorney for Appellees.

## OPINION

RILEY, Judge

*STATEMENT OF THE CASE*

Appellant–Plaintiff, G. Clark Harrison (Harrison), appeals the trial court's denial of his Complaint for Specific Performance of a Purchase Agreement with Carl E. Thomas and Lois L. Thomas (hereinafter collectively referred to as the "Thomases"). Harrison, as the buyer, asserts that the trial court erred by denying his Complaint for Specific Performance and instead entering judgment in favor of the Thomases, the sellers, on their counterclaim to rescind the real estate Purchase Agreement. In granting the rescission, the trial court awarded the Thomases

$5,390.00 in attorney fees under the Purchase Agreement.

We affirm.

## ISSUES

Harrison raises two issues on appeal, which we restate as follows:

1. Whether the trial court erred by entering judgment in the Thomases' favor and denying Harrison's complaint for specific performance of the Purchase Agreement for Harrison's failure to comply with a condition precedent and condition subsequent of the Purchase Agreement.

2. Whether the award of attorney fees to the Thomases was proper.

## FACTS AND PROCEDURAL HISTORY

On May 8, 1998, Harrison and the Thomases entered into a Purchase Agreement for Harrison to purchase property from the Thomases located at 75 Fort Wayne Avenue, in Richmond, Indiana. Pursuant to the contract, Harrison was to obtain and close on an adjacent vacant lot located at the Northeast corner of North 5th and A Streets in Richmond, Indiana. Moreover, the contract provided that time was of the essence, and that closing was to take place on or before July 30, 1998, or within fifteen days after Harrison secured tenant approval, whichever occurred later.

Harrison did not obtain tenant approval until March of 1999. Moreover, Harrison did not obtain and close on the vacant lot until March 23, 1999. Nevertheless, in September of 1998, Harrison's real estate agent contacted the Thomases to inform them that Harrison was prepared to close. However, the Thomases informed Harrison's real estate agent that they no longer wished to sell the property.

On May 10, 1999, Harrison filed a Complaint for Specific Performance requesting that the Thomases be ordered to proceed to closing. On July 19, 1999, the Thomases filed an Answer and Counterclaim, essentially requesting to rescind the real estate contract, and for the trial court to deny Harrison's complaint because the purchase had not been closed by the speci-

fied date in the Purchase Agreement. On August 27, 1999, Harrison filed an Answer to the Thomases' Counterclaim.

On March 7, 2000, a bench trial was held and evidence was heard. On April 26, 2000, the trial court denied Harrison's Complaint for Specific Performance and entered a judgment in the Thomases' favor, including attorney fees in the amount of $5,390.00. Harrison now appeals.

## DISCUSSION AND DECISION
### Standard of Review

Harrison appeals a negative judgment. To prevail on an appeal of a negative judgment, the appellant must establish that the judgment is contrary to law. *Board of Com'rs of Delaware County v. Lions Delaware County Fair, Inc.*, 580 N.E.2d 280 (Ind.Ct.App.1991), *trans. denied.* A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to but one conclusion, but the trial court reached a different conclusion. *Gagne v. Trustees of Indiana University*, 692 N.E.2d 489 (Ind.Ct.App. 1998), *trans. denied.* In addressing whether a negative judgment is contrary to law, we consider only the evidence most favorable to the prevailing party and do not reweigh the evidence or judge the credibility of witnesses. *Board of Com'rs of Delaware County v. Lions Delaware County Fair, Inc.*, 580 N.E.2d 280. Additionally, on appeal of a bench decision, the appellate court will not set aside the judgment unless it is clearly erroneous. Ind. Trial Rule 52(A). When the trial court enters findings on its own motion (as in the present case), specific findings control only as to issues they cover while a general judgment standard applies to any issue upon which the court has not found. *Matter of Estate of Burmeister*, 621 N.E.2d 647, 649 (Ind.Ct.App.1993). The reviewing court will affirm if the judgment can be sustained on any legal theory supported by the evidence most favorable to the judgment, together with all reasonable infer-

ences to be drawn therefrom. *Klebes v. Forest Lake Corp.*, 607 N.E.2d 978, 982 (Ind.Ct.App.1993), *reh'g denied, trans. denied.* Where trial court findings on one legal theory are adequate, findings on another legal theory amount to mere surplusage and cannot constitute the basis for reversal even if erroneous. *Williams v. Rogier*, 611 N.E.2d 189, 196 (Ind.Ct.App. 1993), *trans. denied; Donavan v. Ivy Knoll Apartments Partnership*, 537 N.E.2d 47, 52 (Ind.Ct.App.1989).

### Contract Interpretation

■ We begin our analysis by noting that our supreme court has expressed its commitment to advancing the public policy in favor of enforcing contracts. *See Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind.1995). Indiana courts recognize that it is in the best interest of the public not to unnecessarily restrict persons' freedom to contract. *Id.* Thus, as a general rule, the law allows persons of full age and competent understanding the utmost liberty in contracting; and their contracts, when entered into freely and voluntarily, will be enforced by the courts. *Pigman v. Ameritech Pub., Inc.*, 641 N.E.2d 1026, 1029 (Ind.Ct.App.1994), *reh'g denied.* Indiana has long adhered to the rule that contracting parties may enter into any agreement they desire so long as it is not illegal or contrary to public policy. *Id.* at 1030.

■ Construction of the terms of a written contract is a pure question of law for the court; thus, our standard of review is de novo. *George S. May Intern. Co. v. King*, 629 N.E.2d 257, 260 (Ind.Ct.App. 1994), *reh'g denied, trans. denied.* If a contract is ambiguous or uncertain and its meaning is to be determined by extrinsic evidence, its construction is a matter for the fact finder. *Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1310 (Ind.Ct.App. 1991), *reh'g denied, trans. denied.* If, however, an ambiguity arises because of the language used in the contract and not because of extrinsic facts, its construction is purely a question of law to be determined by the court. *Id.* In interpreting a written contract, the court should attempt to determine the intent of the parties at the time the contract was made as discovered by the language used to express their rights and duties. *Id.* at 1313. The contract is to be read as a whole when trying to ascertain the intent of the parties. *Id.* The court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* at 1316. Finally, the court must accept an interpretation of the contract that harmonizes its provisions as opposed to one which causes the provisions to be conflicting. *Id.*

■ On the other hand, when interpreting an unambiguous contract, we give effect to the intentions of the parties as expressed in the four corners of the instrument. *Hyperbaric Oxygen Therapy Systems, Inc. v. St. Joseph Medical Center of Ft. Wayne, Inc.*, 683 N.E.2d 243, 247 (Ind. Ct.App.1997), *trans. denied.* Clear, plain, unambiguous terms are conclusive of that intent. *Id.* We will neither construe clear and unambiguous provisions nor add provisions not agreed upon by the parties. *Id.*

Here, the Purchase Agreement provisions are clear and unambiguous. The language of the Purchase agreement clearly provides that completion of the transaction was contingent upon Harrison obtaining and closing on the vacant lot. The Purchase Agreement also clearly states that "time is of the essence of this Contract, [and] the closing of the sale (the 'Closing Date') shall take place at the Title Company who insures this transaction ... on or before July 30, 1998, or within [fifteen] 15 days after Tenant approval, whichever is later" (R. 12, 10). Thus, the foregoing language made the Purchase Agreement subject to both a condition precedent and a condition subsequent.

### I. Enforceability of Purchase Agreement

■■ First, Harrison argues that he could waive the provision in the Purchase Agreement stating that the real estate transaction with the Thomases was subject to Harrison obtaining and closing of the

vacant lot. Specifically, Harrison contends that the provision relating to obtaining and closing of the vacant lot was solely for his benefit, and therefore, he could waive such requirement and proceed to closing. Harrison is correct that, even absent specific contractual language, the purchaser of real property to whom the benefit of a contractual condition precedent inures may waive that condition and demand that the seller perform the contract; and if the seller refuses to close, the purchaser may obtain an order of specific performance from the court. *Donavan,* 537 N.E.2d at 52–54; *Kokomo Veterans, Inc. v. Schick,* 439 N.E.2d 639, 645 (Ind.Ct.App.1982). Thus, Harrison reasons that the Thomases breached the Purchase Agreement by refusing to close the transaction and, therefore, the trial court erred by granting the Thomases' rescission and denying Harrison's application for specific performance.

Harrison also argues that the trial court erred in granting rescission by improperly ignoring the alternative provision extending the closing date to fifteen days beyond July 30, 1998. Specifically, Harrison contends that the trial court improperly granted the rescission on the basis that no closing had taken place on or before July 30, 1998 without acknowledging the time extension of fifteen days after tenant approval. However, as will be explained below, the trial court's judgment may be affirmed on the basis of its finding that the Thomases were entitled to rescind the Purchase Agreement upon the failure of a condition subsequent, that is, the expiration of the time allotted for the parties to close or for Harrison to secure tenant approval.

 A request for rescission of a contract is addressed to the sound discretion of the trial court. *Barrington Management Co., Inc. v. Paul E. Draper Family Ltd. Partnership,* 695 N.E.2d 135 (Ind. Ct.App.1998). The party seeking rescission bears the burden of proving his right to rescission and his ability to return any property received under the contract. *Id.* On the other hand, the party appealing the

trial court's grant of rescission has the burden of demonstrating that the trial court's decision was erroneous. *Id.* Rescission is appropriate where the party seeking rescission is not in default and the defaulting party can be restored to the same condition he occupied before the making of the contract. *Id.* Rescission of a contract is not automatically available. *New Life Community Church of God v. Adomatis,* 672 N.E.2d 433, 438 (Ind.Ct. App.1996), *reh'g denied.* However, if a breach of the contract is a material one which goes to the heart of the contract, rescission may be the proper remedy. *Stephenson v. Frazier,* 399 N.E.2d 794, 798 (Ind.Ct.App.1980), *trans. denied.* When a written agreement to convey real property makes time of the essence, fixes a termination date, and there is no conduct giving rise to estoppel or waiver, the agreement becomes legally defunct upon the stated termination date if performance is not tendered. *Smith v. Potter,* 652 N.E.2d 538, 542 (Ind.Ct.App.1995), *trans. denied.* Where time is of the essence of the contract and a time for performance is specified, strict performance at that point of time is necessary unless waived. *Id.*

### Condition Precedent and Subsequent

 A condition precedent is either a condition that must be performed before the agreement of the parties becomes binding, or a condition that must be fulfilled before the duty to perform an existing contract arises. *Dvorak v. Christ,* 692 N.E.2d 920, 924 (Ind.Ct.App.1998), *reh'g denied, trans. denied.* A condition subsequent is a condition that, if performed or violated (as the case may be), defeats the contract. *Id.* In *Dvorak,* the contract to sell real estate was subject to a condition precedent: that the purchaser obtain a mortgage loan in the amount of $451,600.00. *Id.* at 924. The contract was also subject to a condition subsequent: the period of time in which the purchaser had to obtain the financing expired on a date certain. *Id.* at 924. After the time period expired, the purchaser attempted to waive

the condition precedent and demanded that the seller close the transaction. *Id.* at 924. We held that where the purchaser had not communicated, either orally or in writing, an express waiver of the condition precedent before the expiration of the contract, the contract terminated and the seller was not required to close. *Id.*

Here, the Purchase Agreement was subject to Harrison obtaining and closing of the vacant lot. This is the condition precedent. Under another provision of the Purchase Agreement, time was of the essence, and the closing was to take place on or before July 30, 1998, or within fifteen days after tenant approval. This was the condition subsequent.

The record indicates that Harrison never communicated to the Thomases that he wished to waive the condition precedent of obtaining and closing of the vacant lot. Furthermore, the record indicates that Harrison failed to secure a lease on or before July 30, 1998, and never communicated to the Thomases that he wished to extend the specified expiration date of the Purchase Agreement. Although Harrison argues that he contacted the Thomases to communicate that he was prepared to close, Harrison does not contend that he obtained and closed on the vacant lot or that he secured tenant approval on or before July 30, 1998. Our plain reading of the Purchase Agreement reveals that closing was to take place on or before July 30, 1998 or within fifteen days after tenant approval, whichever is later. Thus, if Harrison did not have tenant approval on or before July 30, 1998, the extension of fifteen days was not to apply. Because Harrison never agreed in writing to an extension of time for closing to take place, or to secure tenant approval, beyond the July 30, 1998, deadline, Harrison violated the condition subsequent, and the Purchase Agreement terminated by its own terms as of July 30, 1998. Therefore, the Thomases did not breach the Purchase Agreement by failing to close on the property after that date.

Nevertheless, Harrison contends that the trial court erred in denying his application for specific performance, because he waived the obtaining and closing of the vacant lot contingency clause set forth in the Purchase Agreement. However, our review of the record reveals that Harrison did not communicate to the Thomases, either orally or in writing, an express waiver of the vacant lot condition prior to the termination of the contract on July 30, 1998. Although Harrison argues that he could waive this condition precedent, he fails to explain how or when he effectuated such waiver. Thus, Harrison did not waive the condition precedent of obtaining and closing of the vacant lot.

Harrison neither satisfied the condition precedent nor communicated his waiver thereof before the condition subsequent/expiration date. As time was of the essence, the Purchase Agreement became legally defunct after July 30, 1998. Thus, the trial court did not abuse its equitable discretion in denying Harrison's petition for specific performance and granting the Thomases' rescission.

## II. *Attorney Fees*

Indiana follows the American Rule that ordinarily requires each party to pay their own attorney's fees. *Willie's Const. Co., Inc. v. Baker,* 596 N.E.2d 958, 963 (Ind.Ct.App.1992), *trans. denied.* Attorney fees are not allowable in the absence of a statute or agreement between the parties. *Id.* A contract that allows for the recovery of reasonable attorney fees will be enforced according to its terms unless it is violative of public policy. *Id.*

Here, the trial court awarded the Thomases attorney fees in the amount of $5,390.00. The attorney fees incurred by the Thomases resulted from the Thomases defending against Harrison's request for specific performance of the Purchase Agreement. However, as previously discussed the proceedings with respect to specific performance of the Purchase Agreement were a consequence of Harrison's failure to satisfy the condition prece-

dent and subsequent of the Purchase Agreement, and therefore, Harrison's breach. Accordingly, they were foreseeable, and thus, are recoverable as damages. Moreover, attorney fees in this proceeding are recoverable under the Purchase Agreement, which provided: "Any signatory party to this Contract who is the prevailing party in any legal or equitable proceeding against any other signatory brought under or with relation to the Contract or transaction shall be additionally entitled to recover court costs and reasonable attorney's fees from the nonprevailing party." (R. 11). Thus, the trial court did not err in awarding attorney fees to the Thomases for this proceeding.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly entered judgment in the Thomases' favor and denied Harrison's complaint for specific performance of the Purchase Agreement because Harrison failed to comply with a condition precedent and condition subsequent of the Purchase Agreement. Moreover, the trial court properly awarded the Thomases attorney fees.

Affirmed.

DARDEN and ROBB, JJ., concur.