Penny (Bradtmueller) **REICHHART** and **Chemical Waste Management Of Indiana, L.L.C.,** Appellants–Plaintiffs,

v.

**CITY OF NEW HAVEN, Indiana,** Appellee–Defendant.

No. 90A02–9512–CV–707.

Court of Appeals of Indiana.

Dec. 13, 1996.

Transfer Denied May 22, 1997.

Sherrill Wm. Colvin, Robert W. Eherenman, Charles J. Heiny, Mark Giaquinta, Haller & Colvin, P.C., Fort Wayne, for Appellants–Plaintiffs.

Alan Verplanck, James P. Fenton, Barrett & McNagny, Fort Wayne, for Appellee–Defendant.

## OPINION

FRIEDLANDER, Judge

Upon interlocutory appeal, Penny Reichhart[1] and Chemical Waste Management of Indiana, Inc. (CWMI) challenge the denial of their motion for summary judgment in the action filed against them by the City of New Haven. The appellants present two issues for review, one of which is dispositive.[2] We restate that issue as follows:

Did the trial court err in determining that genuine issues of material fact exist with

[1.] When the original complaint was filed in Allen County, the appellant's (plaintiff below) name was Penny Bradtmueller. Subsequent to the filing of the complaint, Bradtmueller's name changed to Reichhart. For the sake of simplicity, we will refer to appellant as "Reichhart" throughout this opinion.

[2.] Because we conclude that the City's abuse-of-process claim is without merit, we need not address the availability of punitive damages.

regard to the City's abuse-of-process claim?

We reverse and remand.

The facts favorable to the City, the non-movant, are that CWMI operates a hazardous waste disposal facility outside the municipal boundaries of New Haven. CWMI planned to expand the facility. The City and its Mayor, Lynn Shaw, opposed the planned expansion. On November 26, 1991, a special New Haven Common Council meeting was held to consider annexing territory that included CWMI's landfill in order to gain regulatory control of the property, and an ordinance was introduced to that effect. The next day, landfill manager Doug Clark told Reichhart, who owned property in New Haven and was an employee of CWMI, about the City's action and raised the possibility of Reichhart, as a taxpayer of the City of New Haven, filing a lawsuit against the City with CWMI's assistance. Reichhart contacted Leonardo Robinson, CWMI's in-house counsel in Chicago, and Robinson arranged for CWMI's Indianapolis counsel, Plews & Shadley, to represent Reichhart at CWMI's expense.

On December 10, 1991, Plews filed a two-count complaint on Reichhart's behalf in Allen Superior Court. Under Count I, Reichhart alleged that the City had violated the Open Door Law in introducing the annexation ordinance and sought to enjoin the City from considering the ordinance until it complied with the Open Door Law. Reichhart also sought attorney fees under Count I. Under Count II, Reichhart brought a citizen taxpayer challenge, seeking a declaration that the annexation was unlawful and prohibiting the City from proceeding with the annexation. The complaint did not mention that Reichhart was an employee of CWMI or that CWMI was supplying the legal representation.

After a hearing, the trial court granted Reichhart's petition for a TRO on the condition that Reichhart post a $100,000 bond. CWMI posted the bond on Reichhart's behalf. Upon granting the TRO, the trial court stated:

I would tell you, and I specifically want to direct my comments to Mr. Miller and Mr. Harper, because I did not enter this order lightly, and it's [a] very narrowly drafted and defined order only prohibiting Council action on the ordinance in question, based on its introduction at the November 26th special session meeting. You can do whatever you want with regard to that ordinance from here on out. I am not restraining you from considering that ordinance from an ab initio standpoint from the start, and I want to make that clear to you, as counsel, for the City of New Haven. . . . I don't want to leave anyone with the impression that you cannot consider annexation of this property. You're welcome to do that, you just need to start from the beginning and do it.

*Record* at 1097–99. On December 17, 1991, the City withdrew its annexation ordinance. An ordinance for the annexation of the land had not been reintroduced as of the date of the filing of the instant appeal.

On February 6, 1992, CWMI filed a petition with the Common Council of the City of Fort Wayne for the voluntary annexation of its real estate by the City of Fort Wayne. On February 24, 1992, the City filed its Counter–Claim and Third–Party Complaint claiming abuse of process upon the following allegations:

5.) Penny [Reichhart] is and at all times relevant was an employee of Chemical Waste Management of Indiana, Inc. and in fact was attending a "management seminar" in Oak Brook, Illinois at the request of Chemical Waste Management of Indiana, Inc. at the time the Allen Superior Court Heard the Petition for Temporary Restraining Order.

6.) The Petition for Restraining Order and the present Amended Complaint is an effort sponsored and supported by Chemical Waste Management of Indiana, Inc. and which is aimed at delaying the legitimate exercise of New Haven's legislative and civil powers.

7.) The present lawsuit is without merit and was filed for an improper purpose as is evidenced, in part, by Chemical Waste Management of Indiana, Inc.'s attempts to

procure annexation from the City of Fort Wayne.

*Record* at 52.

At the City's request, the action was venued to Wells Circuit Court. Thereafter, Reichhart filed an amended complaint. The City filed a counterclaim against Reichhart and a third-party claim against CWMI alleging in both that the TRO and the amended complaint were filed in order to delay the legitimate exercise of the City's legislative and civil powers and constituted an abuse of process. Reichhart and CWMI filed a motion for summary judgment on the City's abuse of process claim, which the court denied. After several Court of Appeals opinions addressed the subject of abuse of process, Reichhart and CWMI submitted a renewed request for summary judgment, which the court again denied. The trial court certified its ruling for interlocutory appeal and this court accepted jurisdiction on January 11, 1996.

When reviewing the denial of a motion for summary judgment, we employ the same standards used by the trial court. *North Snow Bay, Inc. v. Hamilton,* 657 N.E.2d 420 (Ind.Ct.App.1995). The party seeking summary judgment has the burden of demonstrating that no designated genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *St. Mary's Med. Center, Inc. v. Bromm,* 661 N.E.2d 836 (Ind.Ct.App.1996). We consider the evidence in a light most favorable to the nonmoving party. *Jobes v. Tokheim Corp.,* 657 N.E.2d 145 (Ind.Ct.App.1995).

Reichhart and CWMI contend that they are entitled to summary judgment on the City's abuse of process claim because no genuine issue of material fact exists as to one of the elements of such a claim.

In order to prevail upon a claim of abuse of process, a party must prove the following elements: 1) An ulterior purpose; and 2) a willful act in the use of process not proper in the regular conduct of the proceeding. *Broadhurst v. Moenning,* 633 N.E.2d 326 (Ind.Ct.App.1994). "[O]therwise stated, 'abuse of process requires a finding of misuse or misapplication of process, for an end other

than that which it was designed to accomplish.'" *Id.* at 333 (quoting *Tancos v. A.W., Inc.,* 502 N.E.2d 109, 116 (Ind.Ct.App.1986), *trans. denied* ).

CWMI implicitly acknowledges that the existence of an ulterior motive is not a proper question for summary disposition in the instant case, and rightly so. There are legitimate questions of fact as to Reichhart's and CWMI's motives in instituting and prosecuting the lawsuit. The City argues that summary judgment is inappropriate solely because of the existence of a genuine issue of material fact with regard to ulterior motive without regard to the other element. We therefore must first address the question of whether the existence of ulterior motive alone will sustain an action for abuse of process.

The City cites three cases in support of the proposition that proof of motive alone will sustain a finding of abuse of process. In *Lindsay v. Jenkins,* 574 N.E.2d 324 (Ind.Ct.App.1991), the abuse-of-process plaintiff presented evidence that the defendant initiated a suit solely to cause the plaintiff to incur costs in defending it. Citing *Lindsay,* the City contends:

> the evidence on its face indicates that Chemwaste intended to undermine New Haven's statutory power to annex *by using the lawsuit to impose massive legal expenses on the City.* Under *Lindsay,* such a purpose is an improper and unlawful ulterior purpose which gives rise to liability for abuse of process.

Appellee's Brief at 19 (emphasis in original).

In *Archem, Inc. v. Simo,* 549 N.E.2d 1054 (Ind.Ct.App.1990), *trans. denied,* the abuse of process plaintiff demonstrated that the defendant corporation filed lawsuits against its salespeople in order to keep them employed with the company. Citing *Archem,* the City contends:

> Aside from the pattern of threats on the part of Chemwaste set forth previously, on the face of the testimony of [Reichhart] and the public statements of Clark, the Landfill's former manager, the company's tactic was and is to drain its opponent, the City of New Haven, (and others) financial-

ly and to intimidate the City (and others) by *threatening "30 years"* of litigation. R. at 642. Under *Archem,* such conduct is plainly an abuse of process.

Appellee's Brief at 20 (emphasis in original).

Finally, in *Display Fixtures Co., a Div. of Stein Indus., Inc. v. R.L. Hatcher, Inc.,* 438 N.E.2d 26 (Ind.Ct.App.1982), the abuse of process plaintiff demonstrated that the defendant's sole purpose in filing a mechanic's lien was to induce pressure upon the plaintiff that would result in the payment of debt. The City contends:

> The [*Display Fixtures* ] court held that:
>
>> Abuse of process requires a finding of misuse or misapplication of process for an end other than that for which it was designed to accomplish. *The purpose for which the process is used is the only thing of importance.*
>
> [*Display Fixtures,* 438 N.E.2d] at 31 (citations omitted)(emphasis added). Here, Chemwaste used process in an attempt-clear on the face of the evidence- to bleed New Haven financially, to intimidate New Haven with threats of protracted litigation, and to frustrate New Haven's exercise of its lawful governmental powers.

Brief of Appellee at 20–21 (emphasis in original). *See also Barrow v. Weddle Bros. Constr.,* 161 Ind.App. 601, 316 N.E.2d 845, (1974) ("[t]hus, if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such grounds to extort payment of a debt, it is abuse of process") (quoting W. Page Keeton et al., *Prosser and Keeton on Torts* § 121 (4th ed.1971) ).

While certain language in the cases cited by the City may be interpreted as supporting the City's position, we conclude that the prevailing view is that an abuse of process claim requires proof of *both* elements, including the improper-process element.

 This court has determined that a party may not be liable for abuse of process where legal process has been used to accomplish an outcome which the process was designed to accomplish. "A party's intent is irrelevant where his acts are procedurally

and substantively proper under the circumstances." *Comfax Corp. v. North American Van Lines, Inc.,* 638 N.E.2d 476, 485 (Ind.Ct. App.1994). Put another way, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Groen v. Elkins,* 551 N.E.2d 876, 878–79 (Ind.Ct.App.1990), *trans. denied.* The views expressed in *Comfax* and *Groen* on this subject are the prevailing views and we reaffirm the principles expressed therein. Namely, an abuse of process claim contains two distinct elements, and a party must first establish that the defendant employed improper "process" before the court proceeds to an examination of the defendant's motivation. *Comfax Corp.,* 638 N.E.2d 476; *Groen,* 551 N.E.2d 876; *see also Watters v. Dinn,* 633 N.E.2d 280, 289 (Ind.Ct.App.1994), *trans. denied* ("[w]ithout considering [the defendant's] intent or motive, we conclude that the ... claim fails on the second element of the tort of abuse of process").

We must first clarify the meaning of "process" in this context. CWMI urges a restrictive definition that includes only cases in which there has been an issuance of legal process. Specifically, CWMI contends: "In order to maintain an action for the tort of abuse of process, there must be action emanating from or resting upon court authority." Appellant's Brief at 21. This seems to imply that an abuse of process claim can only be premised upon a formal order or document issued by a court. This view is too restrictive.

 In *Groen,* 551 N.E.2d at 878 n. 3, the court discussed the meaning of "process" in this context:

> "Process" should not be "limited to the strict sense of the term, but [should be] broadly interpreted to encompass the entire range of 'procedures' incident to litigation.... This broad reach of the 'abuse of process' tort can be explained historically, since the tort evolved as a 'catch-all' category to cover improper uses of the judicial machinery...." *Barquis v. Merchants Collection Ass'n of Oakland* (1972), 7 Cal.3d 94, 104, n. 4, 101 Cal.Rptr. 745, 752, 496 P.2d 817, 824.

The *Groen* court further described "process" as use of the "judicial machinery", *id.,* and refined the relevant inquiry as being whether the complained-of acts were "procedurally and substantively proper under the circumstances". 551 N.E.2d at 879. Consistent with the language employed in *Groen,* "process" in this context is given an expansive definition and includes actions undertaken by a litigant in pursuing a legal claim. According to *Groen,* the relevant inquiry as to whether the improper process element was satisfied is: were these acts procedurally and substantively proper under the circumstances? In *Broadhurst,* the court alternately described the inquiry as whether the use of process "was a legitimate use of the judicial system." 633 N.E.2d at 333.

The City identifies the following as instances of process in the instant case: 1) Recruiting Reichhart as a litigant; 2) concealing Reichhart's status as a CWMI employee; 3) representing to the trial court that CWMI was not a real party in interest; 4) posting $100,000 bond on behalf of Reichhart; 5) committing champerty and maintenance by financing Reichhart's lawsuit; 6) engaging in efforts to deprive the City of actual notice of the motion for a TRO; 7) procuring the absence of Reichhart from the TRO hearing and deceiving the court as to the reason for her absence; 8) making assertions in the verified complaint that Reichhart did not know to be true; 9) pursuing attorney's fees when Reichhart admitted that she did not incur such; 10) failure to dismiss the taxpay-

er's action for four years after the annexation ordinance was withdrawn; and 11) pursuing annexation by the City of Fort Wayne.

Allegations (1) through (5) pertain to CWMI's alleged active participation in Reichhart's lawsuit. It is undisputed that, by virtue of her status as a resident of New Haven, Reichhart was entitled to file a taxpayer's action and to initiate proceedings to force compliance with the Open Door Law and city regulations. Even accepting as true the factual allegation underlying claims (1) through (5), the fact remains that the actions initiated by Reichhart were procedurally and substantively proper. In making this determination, we focus not upon Reichhart's or CWMI's motivation, but upon whether institution of the actions against the City were legitimate and proper under the circumstances.

In view of Reichhart's status as a taxpayer of New Haven and the means by which the City originally attempted the annexation, Reichhart's action was authorized by statute and thus legitimate. CWMI's assistance is irrelevant on the question of whether the institution of the Open Door law and taxpayer actions were legitimate uses of process in the first instance. Reichhart used legitimate process in order to achieve the result commanded by that process. Pursuant to the *Broadhurst* and *Groen* tests, the City's claims with regard to allegations (1)-(5) fail because the improper process element is lacking.[3]

---

3. We note that the City's argument upon allegations (1)-(5) is based in part upon the claim that CWMI engaged in champerty and maintenance. These are concepts not often addressed by our courts. "Champerty" is "a bargain with a party to divide land or other matter sued for if the parties to the agreement should prevail at law, the champertor to carry the action at his own expense...." 5 Indiana Law Encyclopedia *Champerty and Maintenance* § 2, at 31–31 (West 1984). "Maintenance" in this context means "an officious intermeddling in an action that in no way belongs to one by maintaining or assisting either party, with money or otherwise, to prosecute or defend it." *Id.* at 32.

Generally, any interest in the subject matter of the suit exempts parties that are giving aid in the suit from charges of champerty or maintenance.

"Where a person promoting the suit of another has any interest whatever, legal or equitable, in the thing demanded, distinct from that

which he may acquire by an agreement with the suitor, he is in effect also a suitor according to the nature and extent of his interest; it is, accordingly, a principle that any interest whatever in the subject matter of the suit is sufficient to exempt a party giving aid to the suitor from the charge of illegal maintenance. Conversely, it is the aiding of a litigant by a stranger having no interest, direct or remote, immediate or contingent on agreement with the party in interest, whereby the stranger is to receive a part of the thing in dispute, that constitutes champerty."

*Id.* at § 5, p. 36 [footnotes omitted]. It would seem that the concepts of champerty and maintenance are intended to prevent a party from acquiring interest in a thing merely by participation in a lawsuit in which they do not have independent status to initiate or join. CWMI's obvious interest in the subject matter of the law-

■ The City claimed under allegation (6) that CWMI and Reichhart committed abuse of process in engaging in efforts to deprive the City of actual notice of the request for a TRO. This allegation is based upon the contention that Reichhart's attorney attempted to deprive the City of actual notice of the TRO hearing by calling the City's attorney's office during the lunch hour because he believed the office would be empty at that time. The City also notes that a CWMI employee informed local news media of the impending TRO hearing two hours before the City's attorney was notified. Irrespective of the accuracy of the City's claim concerning CWMI's intentions, the fact remains that the City received actual notice of the hearing by virtue of the aforementioned phone call. Such cannot support a claim of abuse of process.

■ The City claims CWMI committed abuse of process by procuring Reichhart's absence from the TRO hearing. Even assuming for the sake of argument that the City's allegation is factually correct, Reichhart's absence did not impact the trial court's decision. It was undisputed that Reichhart was entitled to press for a TRO upon the grounds alleged in her complaint, and we can conceive of no reason that Reichhart's presence would have altered the court's decision to issue the TRO. Because her presence did not have a material effect on the proceedings, procuring her absence cannot support a claim of abuse of process.

■ The City claims that CWMI and Reichhart committed abuse of process by making assertions in the verified complaint that they did not know to be true. Specifically, the taxpayer's complaint for declaratory judgment contained the allegation that Reichhart was a taxpayer of the City of New Haven, a fact which Reichhart later admitted she did not know at the time. The record shows that at the time of the filing of the complaint, Reichhart owned property within the New Haven city limits, although she had not yet paid taxes on the property. In *Alexander v. Johnson*, 144 Ind. 82, 41 N.E. 811 (1895), our supreme court determined that a person is a taxpayer of a town and entitled to bring a taxpayer's action so long as he owns land subject to taxation, notwithstanding that he has not yet resided in the town long enough to have actually paid the taxes. Therefore, the representation in question was in fact true, even though Reichhart personally did not know it at the time. We note that the complaint was prepared by Reichhart's attorneys, upon whose advice Reichhart no doubt relied in signing the complaint and thereby attesting to its accuracy. We observe that it is not uncommon in such cases for a litigant to rely upon counsel's expertise and knowledge. We find no grounds for abuse of process here.

■ The City contends that Reichhart committed abuse of process in pursuing attorney fees when all of the legal fees were paid by CWMI. The City does not provide case law to support the proposition that in Indiana a party may not recover attorney fees when the legal fees were paid by a third party in actions such as the instant case, nor does our research reveal such authority. It is therefore not clear whether Reichhart was entitled to such a recovery. Absent case law to the contrary, Reichhart's claim in this regard is arguably viable and cannot supply grounds for abuse of process.

■ The City claims that Reichhart and CWMI committed abuse of process in failing to dismiss the taxpayer's action for four years after the ordinance was withdrawn. The record reveals that, with the exception of several discovery disputes, the focus of litigation in this case from early 1992 through 1994 was the City's abuse-of-process claim. On January 30, 1995, Reichhart submitted a motion to voluntarily dismiss the taxpayer action, which eventually was granted. The dismissal came over the City's objection. We

---

suit, i.e., the land to be annexed, defeats claims based upon champerty and maintenance.

It should be noted, in this regard, that there is a distinction between "standing" to sue and a legitimate interest in the litigation in question. *See Glosser v. City of New Haven*, 256 Ind. 33, 267 N.E.2d 67 (1971); *Civil City of Gas City v. Eastbrook Community School Corp.*, 177 Ind.App. 40, 377 N.E.2d 424 (1978). This is of particular importance with respect to Reichhart's citizen-taxpayer challenge.

conclude that such does not support a claim against Reichhart for abuse of process.

■ Finally, we address the argument that the annexation proceedings relative to the City of Fort Wayne constituted abuse of process. To the extent that this argument is premised upon action taken by the Common Council of Fort Wayne, it is clearly without merit. CWMI and Reichhart cannot be charged with abuse of process for the independent actions of entirely unrelated parties.

To the extent that the contention is premised upon CWMI's pursuing annexation by the City of Fort Wayne, there is no allegation that CWMI's action was procedurally and substantively improper under the circumstances, nor could there be. Assuming *arguendo* that CWMI's action in this regard constituted "process", it was undertaken to achieve a result commanded by that process, i.e., annexation. In fact, CWMI's annexation efforts ultimately proved successful. As was the case with several of the alleged instances of abuse of process discussed previously, the City's argument that abuse of process occurred focuses upon CWMI's motivation in seeking annexation by Fort Wayne. We reiterate that because CWMI's actions were procedurally and substantively proper under the circumstances, CWMI's motivation was irrelevant for purposes of the City's abuse-of-process claim. *Comfax*, 638 N.E.2d 476; *Groen*, 551 N.E.2d 876. "[T]here is no liability where the defendant has done nothing more than carry out process to its authorized conclusion, even with bad intentions." *Groen*, 551 N.E.2d at 878–79.

We conclude that there exists no genuine issue of material fact with regard to the City's abuse-of-process claim. Therefore, CWMI and Reichhart were entitled to summary judgment on that claim, and the trial court erred in denying the summary judgment motion originally filed by Reichhart and CWMI on November 30, 1994. This cause is remanded with instructions to grant the aforementioned motion.

Judgment reversed and remanded.

KIRSCH, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I fully concur with the majority that an abuse of process claim contains two distinct elements, and that to be successful, the claimant must establish employment of "improper process" as well as ulterior motive. My concurrence, however, does not constitute a retreat from my dissenting position in *Comfax Corp. v. North American Van Lines, Inc.* (1994) Ind.App., 638 N.E.2d 476, 486. In that case I concluded that the abuse of process defendant was not entitled to summary judgment because there were genuine issues of material fact as to *both* the use of "improper process" *and* "evil motivation".

I concur in the decision of the majority reversing the determination of the trial court denying the summary judgment.