FILED

Jan 31 2025, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court





# IN THE
# Court of Appeals of Indiana

Indiana Land Trust #3082; Trustee of Indiana Land Trust
#3082, Omar Abuzir, and Haitham Abuzir,

*Appellants*

v.

Hammond Redevelopment Commission, Thomas McDermott,
Jr, Tony Hauprich, Greg Myricks, Dawn Tomich, Wally
Kasprzycki, Miriam Soto Pressley, Anna Mamala, and The City
of Hammond, Indiana, a municipal corporation,

*Appellees*

---

January 31, 2025

Court of Appeals Case No.
24A-PL-1284

Appeal from the Lake Superior Court

The Honorable Bruce D. Parent, Judge

Trial Court Cause No.
45D11-2401-PL-1

**Brown, Judge.**

Indiana Land Trust #3082, Trustee of Indiana Land Trust #3082, Omar Abuzir, and Haitham Abuzir ("Landowners") appeal the trial court's order dismissing their complaint against the Hammond Redevelopment Commission ("HRC"), the City of Hammond, Thomas McDermott, Jr., Tony Hauprich, Greg Myricks, Dawn Tomich, Wally Kasprzycki, Miriam Soto Pressley, and Anna Mamala (collectively, "Defendants").[1]  We reverse.[2]

**Facts and Procedural History**

In a letter dated January 9, 2018, and addressed to Indiana Land Trust #3082, the HRC offered $394,500 for property commonly known as 1318-20 Indianapolis Boulevard, Hammond, Indiana (the "Property").  On June 6, 2019, the HRC filed a complaint against Indiana Land Trust #3082 in the Lake Circuit Court in cause number 45C01-1906-PL-346 ("Cause No. 346") alleging that it was engaged in "a project to develop a public street/alley to improve

---

[1] In their January 2, 2024 complaint, Landowners asserted that McDermott was the Mayor of the City, Hauprich was the President of the HRC, Myricks was the Vice President of the HRC, Tomich was the Secretary of the HRC, Kasprzycki was the Commissioner of the HRC, Pressley was the Commissioner of the HRC, and Mamala was a non-voting Member of the HRC.

[2] On November 20, 2024, we held oral argument.  We thank counsel for traveling to Indianapolis and for their well-prepared advocacy.

public access in and around" the Property and it was necessary for it to acquire the Property. Appellants' Appendix Volume II at 98. It requested that the court "order the appropriation of the real estate interest" and appoint three "disinterested freeholders of Lake County, Indiana, to appraise the value of the interest to be appropriated." *Id.* at 99.

[3] On June 2, 2021, Landowners filed a thirty-six page Counterclaim and Third-Party Complaint in Cause No. 346 which alleged "Count I - § 1983 Against Individual Defendants"; "Count II – City of Hammond, Mayor McDermott, and [HRC] Failure to Train"; "Count III - § 1983 Monell Claim"; and "Count IV – Indiana State Abuse of Process in Violation of Ind. Code Title 32, Article 24 against All Defendants." That same day, Landowners filed a "Motion for Leave to File Claims *Instanter* and to Intervene" in Cause No. 346. Specifically, Landowners sought "leave to file their Counterclaim and Third-Party Complaint and attendant summonses" and requested that the court "grant them leave to intervene as Plaintiffs." On June 17, 2021, the HRC filed a Brief in Opposition to Landowners' Motion for Leave to File Claims Instanter and to Intervene and argued that Indiana's Eminent Domain Act does not permit any pleadings in eminent domain actions outside of the complaint, objections, and written exceptions.

[4] On July 8, 2019, Judge John M. Sedia of the Lake Superior Court entered an order accepting transfer of the case in Cause No. 346. On September 29, 2021, Judge Sedia entered an "Order Denying Motion for Leave to File Claims to Intervene." The court held that Ind. Code § 32-24-1-8(c) "prohibits the filing of

the proposed Counterclaim and intervention by the Trustee,"[3] observed that "3082 and the Intervenors currently have a case pending in federal court addressing the same issues brought forth in their Counterclaim," and found that "[t]hey will not be prejudiced by not being permitted to pursue their Counterclaim and Intervention in this court."[4]

[5]  On December 6, 2023, the United States District Court for the Northern District of Indiana entered an order observing that Indiana Land Trust #3082[5] filed a complaint on June 2, 2021, in state court and it was removed to the District Court on June 24, 2021. *Indiana Land Tr. #3082 v. Hammond Redevelopment Comm'n*, No. 2:21-CV-201-JEM, 2023 WL 8469935, at *1 (N.D. Ind. Dec. 6, 2023), *aff'd*, 107 F.4th 693 (7th Cir. 2024). The District Court observed that the third amended complaint set forth four counts including Count IV, which asserted a state claim for abuse of process against "all Defendants."[6] *Id.* It dismissed with prejudice Counts I, II, and III. *Id.* at *7.

---

[3] The trial court's order quoted Ind. Code § 32-24-1-8(c), which provides: "The court may not allow pleadings in the cause other than the complaint, any objections, and the written exceptions provided for in section 11 of this chapter. However, the court may permit amendments to the pleadings." The order later states that "I.C. 32-24-1-9(c) prohibits the filing of the proposed Counterclaim and intervention by the Trustee." September 29, 2021 Order at 1. It appears that the court's citation to Ind. Code 32-24-1-9, which is titled "Appraisers," was a scrivener's error.

[4] Indiana's Odyssey Case Management System indicates that Judge Sedia entered an order on September 25, 2024, scheduling a status hearing on April 7, 2025.

[5] The District Court listed "Indiana Land Trust #3082, et al., Plaintiffs" in the caption and then began referring to "Plaintiffs" without identifying all of the Plaintiffs. *Indiana Land Tr. #3082 v. Hammond Redevelopment Comm'n*, No. 2:21-CV-201-JEM, 2023 WL 8469935, at *1 (N.D. Ind. Dec. 6, 2023), *aff'd*, 107 F.4th 693 (7th Cir. 2024).

[6] The District Court indicated that the defendants included the City of Hammond, Thomas McDermott, Jr., the HRC, and HRC members. *Indiana Land Tr. #3082*, 2023 WL 8469935 at *1.

With respect to Count IV, the court declined to exercise supplemental jurisdiction "over Plaintiffs' state-law claim." *Id.* It found that "dismissal under 28 U.S.C. § 1367(d) is the proper vehicle for disposing of the remaining count of the Third Amended Complaint so that they [sic] can be refiled in state court, should Plaintiffs so choose." *Id.* The court dismissed Count IV without prejudice. *Id.* On July 10, 2024, the United States Court of Appeals for the Seventh Circuit entered an opinion observing that "[t]he eminent domain action is playing out in Indiana state court" and affirming the district court's dismissal of the third amended complaint. 107 F.4th at 696.

[6] Meanwhile, on January 2, 2024, Landowners filed a Complaint and Jury Demand against Defendants in Lake Superior Court in cause number 45D02-2401-PL-1 ("Cause No. 1").[7] Landowners alleged "Indiana Abuse of Process Against All Defendants." Appellants' Appendix Volume II at 39 (capitalization and underlining omitted). They alleged that the individual Defendants reached an understanding to take the Property for a private purpose; the taking was for "discriminatory private purposes, for private gain, motivated by spite and/or that it is against public purposes," *id.* at 23; the taking was being pursued "by the HRC and its members for the private benefit of the Mayor, his campaigns, and to benefit the private interests of other persons, including developers in the

---

[7] The Appellants' Appendix contains a chronological case summary for cause number 45D11-2401-PL-1, which indicates that the complaint was filed on January 2, 2024, that the "Current Case Assignment" involved case number 45D11-2401-PL-1, and that the "Previous Case Assignments" involved case number 45D02-2401-PL-1. Appellants' Appendix Volume II at 2. We use "Cause No. 1" to refer to cause numbers 45D11-2401-PL-1 and 45D02-2401-PL-1.

area," *id.*; "each Defendant knew that there is no proper public purpose for the taking and/or that the [Property] was targeted to personally benefit the Mayor," *id.* at 29; Landowners own a fireworks business on the Property and "the Mayor and his campaigns want to eliminate competitors to" a fireworks business owned by the Mayor's friend and political contributor, *id.* at 30; the Property is being targeted because Landowners do not contribute to the Mayor or advertise on the podcast owned in part by the Mayor; Defendants were not taking the land on the adjoining properties because their owners were connected to a mayoral contributor; and all HRC members knew there was never any plan to build "the pretextual road/alley" and were aware that "the condemnation of the [property] was being pursued solely for political reasons alone and in a discriminatory fashion, and the HRC members' acts and omissions occurred at the Mayor's behest as part of the Mayor's well-known pay-to-play schemes." *Id.* at 38-39.

[7] Landowners alleged that each of the following constituted an abuse of process: "[p]ursuing a taking for access that is admittedly against the public interest"; [p]ursuing a taking based on false rationales, false testimony, and willful and misleading acts"; "[p]ursuing a taking, on information and belief, to help Gregory Kaplan," the owner of several fireworks shops in Hammond and the Mayor's friend and political contributor, "the Mayor's campaigns, and/or his podcast revenues, and to punish [Landowners] for not doing so"; and "[p]ursuing a taking, on information and belief, solely to take property for private development by political contributors." *Id.* at 40.

They argued that Defendants' litigation in Cause No. 346 "violates Ind. Code Title 32, Article 24" and that Defendants' actions were "not due any immunity under Ind. Code Title 32, Article 24." *Id.* They asserted that "all forms of relief are warranted to remedy Defendants' acts" and they were entitled to money damages. *Id.* at 41 (capitalization and underlining omitted). They requested compensatory damages, punitive damages, a trial by jury, interest, attorney fees, and "any and all other relief to which they may be entitled." *Id.* at 42.

On February 9, 2024, the City of Hammond and Thomas McDermott, Jr., in his individual and official capacity as mayor, filed a motion to dismiss and a brief, which cited Ind. Trial Rule 12(B)(6). They argued that Landowners could not state a cognizable claim for alleged abuse of process because the pending eminent domain case was the proper statutory action within which to adjudicate the taking and Landowners' alleged objections and defenses. They also argued that Mayor McDermott was immune from alleged liability for Landowners' abuse of process claim pursuant to Ind. Code § 34-13-3-5(a)-(c). They further argued that Landowners' claim for punitive damages was barred by Ind. Code § 34-13-3-4(b).[8] On February 12, 2024, the HRC, Hauprich, Myricks, Tomich, Kasprzycki, Pressley, and Mamala filed a Request to Join Co-Defendants' Motion to Dismiss and Brief in Support of Motion to Dismiss. On March 11, 2024, Landowners filed a thirty-eight-page response to the

---

[8] Ind. Code § 34-13-3-4(b) provides: "A governmental entity or an employee of a governmental entity acting within the scope of employment is not liable for punitive damages."

motion to dismiss. On March 18, 2024, the City of Hammond and Mayor McDermott filed a reply.

[10] On April 29, 2024, Judge Bruce D. Parent of the Lake Superior Court held a hearing in Cause No. 1 at which counsel for the City and the Mayor argued that the intent of the HRC or the City "is irrelevant so long as it proceeds in a procedurally correct manner and a substantively proper manner." Transcript Volume II at 8. Counsel also cited Ind. Code § 34-13-3-3(a)(6) which is a part of the Indiana Tort Claims Act (the "ITCA") and provides that a governmental entity or an employee acting within the scope of the employee's employment is not liable if the loss results from the initiation of a judicial or administrative procedure. Counsel argued that Landowners "have the opportunity to object and litigate these issues at the place where the taking occurs in Judge Sedia's court." *Id.* at 12. Landowners' counsel argued that opposing counsel "focus mostly on the procedurally proper aspect of the use of process of a taking's case, but they ignore that it must also be substantively proper" and that "when you have that improper substantive use of the [Eminent] Domain Statute combined with improper motives an abuse of process claim is stated." *Id.* at 14. She also argued that "it's not substantively correct because there are about five ways laid out in our response to the motion to dismiss where you can see that you cannot take property for private ends under Indiana Eminent Domain Law." *Id.* at 21-22. She referenced Judge Sedia's order and argued that he "has already found that such claims are properly pursued elsewhere because the Eminent Domain Statute only allows objections" and "[i]t doesn't allow counterclaims." *Id.* at

23.  With respect to the ITCA, Landowners' counsel argued: "It's not initiation that is at issue here, your Honor.  It is the continuing litigation despite the discovery of facts that demonstrate that the basis for the taking is false."  *Id.* at 27.  Counsel for the City and the Mayor argued: "[T]he simple fact of that matter is, the [Landowners] are conceding that we did have the right to initiate the lawsuit.  That is, we had the right procedurally and substantively to file this lawsuit."  *Id.* at 32.

[11]   On May 2, 2024, Judge Parent granted Defendants' motion to dismiss pursuant to Ind. Trial Rule 12(B)(6), denied "[a]ny and all other motions or requests by either party, not specifically ruled upon herein," and stated that the order "constitutes a final and appealable order of the Court; the Court expressly found that there is no just reason for delay in appealing pursuant to Trial Rule 54(B).  All parties are free to appeal this matter immediately."  Appellants' Appendix Volume II at 14-17.  The court observed that "[a] defendant in a condemnation action may object to the proceedings . . . because the plaintiff does not have the right to exercise the power of eminent domain for the use sought or for any reason disclosed in the complaint, or set up in the objections."  *Id.* at 15 (citing Ind. Code § 32-24-1-8(a)(2) and (3)).[9]  It found that "[t]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."  *Id.*

---

[9] Ind. Code § 32-24-1-8(a) provides: "A defendant may object to the proceedings: . . . (2) because the plaintiff does not have the right to exercise the power of eminent domain for the use sought; or (3) for any other reason disclosed in the complaint or set up in the objections."

(citing *Groen v. Elkins*, 551 N.E.2d 876, 878-879 (Ind. Ct. App. 1990), *trans. denied*).  It stated that "[w]here a question of fraud or bad faith is raised as where an attempt is made to show that the property taken will not be used for public purpose, or the proceedings is a subterfuge to convey the property to a private use, courts may inquire into the administrative determination of necessity."  *Id.* at 16.  The court's order states:

> 12.  The condemnation action underlying this lawsuit is presently pending in the Lake Superior Court, Civil Room One before Judge John M. Sedia: *Hammond Redevelopment Commission v. Indiana Land Trust #3082*, under cause # 45D01-1906-PL-00346.[10]
>
> 13.  With the present lawsuit, the [Landowners] claimed an abuse of process by the DEFENDANTS related to the condemnation action presently pending before Judge Sedia.
>
> 14.  Importantly, the DEFENDANTS here chose the correct form of action – a condemnation action – in the lawsuit before Judge Sedia and [Landowners] there claimed defenses ("objections") that included abuse of process as to each claim in the present lawsuit.
>
> 15.  Consequently, the merits of the DEFENDANTS' claims and the merits of [Landowners'] objections will be heard and resolved by Judge Sedia in the action pending before him.

---

[10] While the order cited "45D01-1906-PL-00346," it appears that the use of "D" in the order was a scrivener's error and the trial court intended to refer to cause number 45C01-1906-PL-346 or Cause No. 346. Appellants' Appendix Volume II at 16.

16. An eminent domain action is the correct mechanism, both procedurally and substantively, for the condemnation proceedings.

17. This Court therefore found that [Landowners'] complaint failed to state a claim upon which relief can be granted by this Court.

18. The issues claimed in this lawsuit are issues to be properly heard and determined by Judge Sedia within the confines of the lawsuit pending before him.

19. For this Court to maintain the present lawsuit, it would run the risk of subjecting the parties to different orders on the same issues from two different Superior Courts.

*Id.* at 16-17.

## Discussion

[12] Landowners argue that "[t]here is no 'eminent domain' exception to the tort of abuse of process, yet that is what the trial court created." Appellants' Brief at 27. They contend that the trial court "effectively [held] that the tort of abuse of process can never arise from a takings case." *Id.* at 28. They argue that the trial court erroneously dismissed their case "even though the abuse of process tort will not be decided in the takings case because the eminent domain statute bars counterclaims in takings cases – as Judge Sedia *already* decided in the takings case (in 2021)." *Id.* They suggest that "Judge Sedia's Order determining that the abuse of process claim should be pursued outside of his takings case should have been collateral estoppel, preventing the trial court below from finding that a risk of inconsistent evidentiary rulings somehow warranted dismissal." *Id.* at

34. They assert that they properly pled the allegation of Defendants' substantive misuse of proceedings. Specifically, they argue that the taking was substantively improper because it was for "private, false ends," it involved "an entire parcel of land well in excess of what is needed for a narrow 'alley,'" and "taking upon a false basis is also not allowed under Indiana eminent domain law and is also substantively improper." *Id.* at 36.

[13] Defendants argue that collateral estoppel does not apply because the September 29, 2021 order "is not a final judgment at all, a required element for the application of collateral estoppel." Appellees' Brief at 25. They contend that the September 29, 2021 order "was not a ruling on the merits of any of the Landowners' allegations . . . ." *Id.* at 26. They assert: "Nor are the Trial Court's May 2, 2024 dismissal order and the Eminent Domain Court's September 29, 2021 order in conflict." *Id.* They argue that the trial court "correctly found that the Landowners' Objections to the taking in the Eminent Domain Action based upon Hammond's alleged 'bad motives' and other improprieties are defenses which will be specifically decided in the Eminent Domain Action . . . ." *Id.* at 27. They maintain that Indiana courts have repeatedly held that allegations of ill motives will not salvage a claim for abuse of process if the form of action chosen is correct. They also argue that the ITCA bars Landowners' abuse of process and punitive damages claims. They further argue that "[w]hat the Landowners have actually done instead is

conflate (or confuse) a claim of abuse of process with a claim of malicious prosecution."[11] *Id.* at 28.

[14] We review a trial court's decision on a Trial Rule 12(B)(6) motion de novo.[12] *WEOC, Inc. v. Niebauer*, 226 N.E.3d 771, 774 (Ind. 2024). When ruling on a motion to dismiss, the court must view the pleadings in the light most favorable to the nonmoving party with every reasonable inference construed in the non-movant's favor. *Thornton v. State*, 43 N.E.3d 585, 587 (Ind. 2015). "[A] motion to dismiss under Rule 12(B)(6) 'tests the legal sufficiency of the plaintiff's claim, not the facts supporting it.'" *Residences at Ivy Quad Unit Owners Ass'n, Inc. v. Ivy Quad Dev., LLC*, 179 N.E.3d 977, 981 (Ind. 2022) (quoting *Bellwether Props., LLC v. Duke Energy Ind., Inc.*, 87 N.E.3d 462, 466 (Ind. 2017) (cleaned up) (quoting *Thornton*, 43 N.E.3d at 587)). "Dismissal under Rule 12(B)(6) is 'rarely appropriate.'" *WEOC, Inc.*, 226 N.E.3d at 774 (quoting *State v. Am. Fam. Voices, Inc.*, 898 N.E.2d 293, 296 (Ind. 2008) (quotations omitted), *reh'g denied*).

---

[11] The elements of a malicious prosecution claim include: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor. *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001). "In contrast to malicious prosecution, an action for abuse of process 'does not require proof that the action was brought without probable cause or that the action would have terminated in favor of the party asserting abuse of process.'" *Id.* (quoting *Central National Bank of Greencastle v. Shoup*, 501 N.E.2d 1090, 1095 (Ind. Ct. App. 1986) (citing *Cassidy v. Cain*, 145 Ind. App. 581, 590, 251 N.E.2d 852, 857 (1969), *trans. denied*), *reh'g denied*).

[12] In their motion to dismiss, the City and McDermott cited Cause No. 346 and Exhibit E, which was attached to Landowners' Complaint and was the Complaint filed by the HRC in Cause No. 346. In their brief in support of their motion to dismiss, they cited Exhibit E (the Complaint in Cause No. 346). Neither party suggests that the motion to dismiss should have been treated as one for summary judgment, and we treat the motion as one under Ind. Trial Rule 12(B)(6). *See Moss v. Horizon Bank, N.A.*, 120 N.E.3d 560, 563-564 (Ind. Ct. App. 2019) (holding that the trial court was not required to convert a motion to dismiss into a summary judgment motion as materials of which a trial court may take judicial notice are not considered matters outside the pleadings).

"Indeed, dismissal is appropriate only when 'it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief.'" *Id.* (quoting *Am. Fam. Voices, Inc.*, 898 N.E.2d at 296). We will not affirm such a dismissal unless it is apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances.[13] *Thornton*, 43 N.E.3d at 587.

A. *Abuse of Process Claim May be Pursued Separately from Eminent Domain Action*

[15] We begin by observing that the trial court's dismissal was premised, in large part, upon the conclusion that the abuse of process claim may not be pursued separately from the eminent domain action. Condemnation is an exercise of the State's power of eminent domain. *Util. Ctr., Inc. v. City of Fort Wayne*, 985 N.E.2d 731, 735 (Ind. 2013). "And because statutes of eminent domain are 'in derogation of the common law rights to property [they] must be strictly construed, both as to the extent of the power and as to the manner of its exercise.'" *Id.* (quoting *Cemetery Co. v. Warren Sch. Twp.,* 236 Ind. 171, 139 N.E.2d 538, 544 (1957) (citing *Kinney v. Citizens' Water & Light Co. of Greenwood*,

---

[13] To the extent Landowners argue that Judge Sedia's September 29, 2021 order "should have been collateral estoppel, preventing the trial court below from finding that a risk of inconsistent evidentiary rulings somehow warranted dismissal," Appellants' Brief at 34, we disagree as we cannot say that order constituted a final judgment on the merits. *See Miller v. Patel*, 212 N.E.3d 639, 646 (Ind. 2023) ("Three conditions lay the foundation for collateral estoppel: (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action.") (quotation and citation omitted); *see also* 17 Ind. Law Encyc. Judgment § 320 ("Under res judicata principles, issue preclusion by collateral estoppel attaches only to final judgments or decrees and not to interlocutory judgments, decrees, or orders, which remain under the control of the court.") (footnotes omitted).

173 Ind. 252, 90 N.E. 129, 131 (1909); *Westport Stone Co. v. Thomas,* 170 Ind. 91, 83 N.E. 617, 617 (1908))). "[T]he power of eminent domain—the right to appropriate for public use the private property of the citizen against his will—has been characterized as a 'very high and dangerous one,' and [the State] cannot exercise that power . . . unless it is able to show clear legislative authority for so doing." *State v. Collom*, 720 N.E.2d 737, 741 (Ind. Ct. App. 1999) (quoting *Shedd v. Northern Indiana Public Service Co.*, 206 Ind. 35, 41-42, 188 N.E. 322, 324 (1934)).

[16] The Indiana Supreme Court has held that "[b]oth the United States Constitution and the Indiana Constitution prohibit the government from taking private land 'without just compensation.'" *State v. Franciscan All., Inc.*, 245 N.E.3d 144, 148 (Ind. 2024) (quoting U.S. Const. amend. V; Ind. Const. art. 1, § 21). "In an eminent domain action . . . , statute provides the process for assessing such compensation and other damages owed." *Id.* (citing Ind. Code § 32-24-1-9). "That assessment includes the 'fair market value' of the property to be acquired, as well as damages 'to the residue of the property' that the owner retains." *Id.* (quoting Ind. Code § 32-24-1-9(c)(1)-(3)).[14] "But there is no

---

[14] Ind. Code § 32-24-1-9(c) provides:

The appraisers shall determine and report all of the following:

(1) The fair market value of each parcel of property sought to be acquired and the value of each separate estate or interest in the property.

(2) The fair market value of all improvements pertaining to the property, if any, on the portion of the property to be acquired.

constitutional or statutory right to compensation for damages that do not result from a taking." *Id.*

[17] Landowners suggest that the eminent domain action fails to encompass the damages available to them for the alleged abuse of process. At oral argument, Defendants' counsel acknowledged that a landowner could receive attorney fees up to $25,000 in an eminent domain action. Oral Argument at 35:30-35:54. He also acknowledged that attorney fees sought in an abuse of process claim would not be limited to $25,000. *Id.* at 35:55-36:03. Thus, the compensation allowed under an eminent domain action clearly does not include all damages available from a tort claim for abuse of process. Accordingly, we conclude that an eminent domain action is inadequate to address the abuse of process claim.

[18] We also note that, in the eminent domain action pending in Cause No. 346, Judge Sedia entered the September 29, 2021 order which stated that Ind. Code § 32-24-1-8(c) "prohibits the filing of the proposed Counterclaim and intervention by the Trustee." Judge Sedia also acknowledged the federal case, which involved a state claim for abuse of process, and he stated that Landowners would not be prejudiced by not being permitted to pursue their counterclaim and intervention in Cause No. 346. Thus, Judge Sedia envisioned that the

(3) The damages, if any, to the residue of the property of the owner or owners caused by taking out the part sought to be acquired.

(4) The other damages, if any, that will result to any persons from the construction of the improvements in the manner proposed by the plaintiff.

abuse of process claim and the damages related to that claim would be addressed in another forum.

B. *Landowners' Abuse of Process Claim Survives 12(B)(6) Review*

[19] Generally, "[i]n order to prevail upon a claim of abuse of process, a party must prove the following elements: 1) An ulterior purpose; and 2) a willful act in the use of process not proper in the regular conduct of the proceeding." *Reichhart v. City of New Haven*, 674 N.E.2d 27, 30 (Ind. Ct. App. 1996). Otherwise stated, abuse of process requires a finding of misuse or misapplication of process, for an end other than that which it was designed to accomplish. *Id.*

[20] To the extent Defendants argue that Indiana courts have held that allegations of ill motives will not salvage a claim for abuse of process if the form of action chosen is proper, Defendants cite *Reichhart*. In that case, on November 26, 1991, a special New Haven Common Council meeting was held to consider annexing territory that included a landfill operated by Chemical Waste Management of Indiana, Inc. ("CWMI") in order to gain regulatory control of the property, and an ordinance was introduced to that effect. *Id.* at 29. On December 10, 1991, Penny Reichhart, an employee of CWMI and a property owner in New Haven, filed a lawsuit alleging that New Haven had violated the Open Door Law in introducing the annexation ordinance and sought a declaration that the annexation was unlawful and prohibiting the City from proceeding with the annexation. *Id.* On December 17, 1991, the City withdrew its annexation ordinance. *Id.* On February 6, 1992, CWMI filed a petition with

the Common Council of the City of Fort Wayne for the voluntary annexation of its real estate by the City of Fort Wayne. *Id.* On February 24, 1992, the City filed its Counter-Claim and Third-Party Complaint alleging that Reichhart's lawsuit, financed by CWMI, constituted an abuse of process. *Id.* at 29-30. Reichhart and CWMI filed a motion for summary judgment on the City's abuse of process claim, which the trial court denied. *Id.*

[21] On interlocutory appeal, this Court addressed whether the trial court erred in determining that genuine issues of material fact existed with regard to an abuse of process claim filed by the City of New Haven. *Id.* at 28-29. We addressed "the question of whether the existence of ulterior motive alone will sustain an action for abuse of process." *Id.* at 30.

[22] The Court held:

> This court has determined that a party may not be liable for abuse of process where legal process has been used to accomplish an outcome which the process was designed to accomplish. "A party's intent is irrelevant where his acts are procedurally and substantively proper under the circumstances." *Comfax Corp. v. North American Van Lines, Inc.*, 638 N.E.2d 476, 485 (Ind. Ct. App. 1994). Put another way, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Groen v. Elkins,* 551 N.E.2d 876, 878-79 (Ind. Ct. App. 1990), *trans. denied*. . . . Namely, an abuse of process claim contains two distinct elements, and a party must first establish that the defendant employed improper "process" before the court proceeds to an examination of the defendant's motivation. *Comfax Corp.,* 638 N.E.2d 476; *Groen,* 551 N.E.2d 876; *see also Watters v. Dinn,* 633 N.E.2d 280, 289 (Ind. Ct. App. 1994), *trans.*

*denied* ("[w]ithout considering [the defendant's] intent or motive, we conclude that the . . . claim fails on the second element of the tort of abuse of process").

*Id.* at 31.

[23]     Specifically, the Court held:

> In *Groen,* 551 N.E.2d at 878 n.3, the court discussed the meaning of "process" in this context:
>
>> "Process" should not be "limited to the strict sense of the term, but [should be] broadly interpreted to encompass the entire range of 'procedures' incident to litigation . . . . This broad reach of the 'abuse of process' tort can be explained historically, since the tort evolved as a 'catch-all' category to cover improper uses of the judicial machinery . . . ."
>> *Barquis v. Merchants Collection Ass'n of Oakland* (1972), 7 Cal.3d 94, 104, n.4, 101 Cal. Rptr. 745, 752, 496 P.2d 817, 824.
>
> The *Groen* court further described "process" as use of the "judicial machinery", *id.*, and refined the relevant inquiry as being whether the complained-of acts were "procedurally and substantively proper under the circumstances". 551 N.E.2d at 879. Consistent with the language employed in *Groen*, "process" in this context is given an expansive definition and includes actions undertaken by a litigant in pursuing a legal claim. According to *Groen,* the relevant inquiry as to whether the improper process element was satisfied is: were these acts procedurally and substantively proper under the circumstances? In *Broadhurst* [*v. Moenning*]*,* the court alternately described the inquiry as whether the use of process "was a legitimate use of the judicial system." 633 N.E.2d [326, 333 (Ind. Ct. App. 1994)].

*Id.* at 31-32.

In their complaint, Landowners asserted that Defendants pursued Cause No. 346 "based on untrue reasons," "[t]he lack of justification for the taking evidences that Defendants pursuing the Underlying Litigation for private purposes and upon ulterior motives," and Defendants' "claim that the entire Trust Property was selected as a shorter and cheaper route is intentional misrepresentation arising from ulterior, private motives." Appellants' Appendix Volume II at 39-40. They asserted that the individual Defendants reached an understanding to take the Property for a private purpose; the taking was for "discriminatory private purposes, for private gain, motivated by spite and/or that it is against public purposes," *id.* at 23; the taking is being pursued "by the HRC and its members for the private benefit of the Mayor, his campaigns, and to benefit the private interests of other persons, including developers in the area," *id.*; and "each Defendant knew that there is no proper public purpose for the taking and/or that the [Property] was targeted to personally benefit the Mayor." *Id.* at 29. They also alleged that each of the following constituted an abuse of process: "[p]ursuing a taking for access that is admittedly against the public interest"; [p]ursuing a taking based on false rationales, false testimony, and willful and misleading acts"; "[p]ursuing a taking, on information and belief, to help Kaplan," the owner of several fireworks shops in Hammond and the Mayor's friend and political contributor, "the Mayor's campaigns, and/or his podcast revenues, and to punish [Landowners] for not doing so"; and "[p]ursuing a taking, on information and

belief, solely to take property for private development by political contributors."
*Id.* at 40.

[25] We also note that, in addressing an eminent domain claim, the Indiana Supreme Court has stated: "At some place in the proceedings, and by some method the landowner is entitled to contest the legality of the condemnation proceedings, and question the authority under which the attempt is being made to take his property including the issue of whether or not it is a private or public purpose." *Cemetery Co.*, 236 Ind. at 178, 139 N.E.2d at 541. Further, the Court held that a question of fraud or bad faith may be raised and considered. *Id.* at 188, 139 N.E.2d at 546. Specifically, the Court stated: "We do not think the court has the power to inquire into the wisdom or propriety of such judgment *unless a question of fraud or bad faith is raised* as where an attempt is made to show that the property taken will not be used for a public purpose, or the proceeding is a subterfuge to convey the property to a private use." *Id.* (emphasis added). *See also Hass v. State, Dep't of Transp.*, 843 N.E.2d 994, 999 (Ind. Ct. App. 2006) ("It is well-established in Indiana that the question of the necessity or expediency of a taking in eminent domain lies within the discretion of the Legislature and is not a proper subject for judicial review. However, where a question of fraud or bad faith is raised as where an attempt is made to show that the property taken will not be used for a public purpose, or the proceeding is a subterfuge to convey the property to a private use, courts may inquire into the administrative determination of necessity.") (citations and quotation marks omitted), *reh'g denied*, *trans. denied*.

Based upon their complaint, Landowners essentially alleged that the eminent domain action was substantively improper, they raised questions of fraud and bad faith, and they alleged that the proceeding was a subterfuge to convey the Property for a private use. Given the procedural posture of this case and the expansive definition of process that includes both procedural and substantive elements and mindful that we view the pleadings in the light most favorable to Landowners and construe every reasonable inference in their favor, we conclude that Landowners raised a question that is a proper subject for judicial review and sufficiently alleged a claim for abuse of process. The trial court erred in granting Defendants' motion to dismiss.

## C. *ITCA*

As for Defendants' claim that the ITCA bars Landowners' abuse of process and punitive damages claims, Defendants cite Ind. Code § 34-13-3-3(a)(6), which provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following . . . (6) The initiation of a judicial or an administrative proceeding." They also assert that "a municipal board or employee cannot be sued for acts undertaken within the scope of their duties, and punitive damages cannot be recovered from a municipality." Appellees' Brief at 40 (citing Ind. Code § 34-13-3-5(b) and (c)).

Ind. Code § 34-13-3-5 provides in part:

(a) Civil actions relating to acts taken by a board, a committee, a commission, an authority, or another instrumentality of a governmental entity may be brought only against the board, the committee, the commission, the authority, or the other instrumentality of a governmental entity. A member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity may not be named as a party in a civil suit that concerns the acts taken by a board, a committee, a commission, an authority, or another instrumentality of a governmental entity where the member was acting within the scope of the member's employment. For the purposes of this subsection, a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity is acting within the scope of the member's employment when the member acts as a member of the board, committee, commission, authority, or other instrumentality.

(b) A judgment rendered with respect to or a settlement made by a governmental entity bars an action by the claimant against an employee, including a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity, whose conduct gave rise to the claim resulting in that judgment or settlement. A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally. However, if the governmental entity answers that the employee acted outside the scope of the employee's employment, the plaintiff may amend the complaint and sue the employee personally. An amendment to the complaint by the plaintiff under this subsection must be filed not later than one hundred eighty (180) days from the date the answer was filed and may be filed notwithstanding the fact that the statute of limitations has run.

(c) A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:

(1) criminal;

> (2) clearly outside the scope of the employee's
> employment;
> (3) malicious;
> (4) willful and wanton; or
> (5) calculated to benefit the employee personally.
>
> The complaint must contain a reasonable factual basis supporting
> the allegations.

[29] The ITCA "governs lawsuits against political subdivisions and their employees." *Burton v. Benner*, 140 N.E.3d 848, 852 (Ind. 2020) (quoting *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003); and citing Ind. Code § 34-13-3-1 et seq.). "The statute sets forth certain parameters to determine liability for negligent acts or omissions on the part of government employees and 'provides substantial immunity for conduct within the scope of the employee's employment.'" *Id.* (quoting *Bushong*, 790 N.E.2d at 472). "The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Id.* (quoting *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000) (citation omitted)). "Generally speaking, 'whether an employee's actions were within the scope of employment is a question of fact to be determined by the factfinder.'" *Id.* (quoting *Knighten v. East Chicago Housing Authority*, 45 N.E.3d 788, 794 (Ind. 2015) (citation omitted)). "When the facts are undisputed and 'would not allow a jury to find that the tortious acts were within the scope of employment,' however, a court may conclude as a

matter of law that the acts were not in the scope of employment." *Id.* (quoting *Cox v. Evansville*, 107 N.E.3d 453, 460 (Ind. 2018)).

[30]  In their complaint, while Landowners alleged "[f]or all facts pleaded herein, each Defendant's acts and omissions were undertaken under color of law and, for the individual Defendants, within the scope of their employment with HRC and/or City," they also alleged, "[a]lternatively, each Defendant's acts and omissions were undertaken under color of law and all individual Defendants acted outside the scope of their employment with HRC and/or the City."[15] Appellants' Appendix Volume II at 19.  In addition to the assertions in the complaint discussed above, Landowners also alleged that Defendants' acts and omissions were committed "intentionally, unlawfully, maliciously, wantonly, recklessly, negligently, and/or with bad faith."  *Id.* at 41.  Given the procedural posture, we cannot say that the facts are undisputed, and we decline at this stage of the proceedings to conclude as a matter of law whether Defendants were immune under the ITCA.

_____

[15] Ind. Trial Rule 8(E)(2) provides:

> A pleading may set forth two [2] or more statements of a claim or defense alternatively or hypothetically, either in one [1] count or defense or in separate counts or defenses.  When two [2] or more statements are made in the alternative and one [1] of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements.  A pleading may also state as many separate claims or defenses as the pleader has regardless of consistency and whether based on legal or equitable grounds.  All statements shall be made subject to the obligations set forth in Rule 11.

For the foregoing reasons, we reverse the trial court's order granting Defendants' motion to dismiss.

Reversed.

May, J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANTS

Karol A. Schwartz
Greg A. Bouwer
Jeffrey R. Carroll
Koransky, Bouwer, & Poracky, P.C.
Dyer, Indiana

ATTORNEYS FOR APPELLEES CITY OF HAMMOND AND
THOMAS MCDERMOTT, JR.

David C. Jensen
Robert J. Feldt
Eichhorn & Eichhorn, LLP
Hammond, Indiana

ATTORNEY FOR APPELLEES HAMMOND REDEVELOPMENT COMMISSION,
TONY HAUPRICH, GREG MYRICKS, DAWN TOMICH, WALLY KASPRZYCKI,
MIRIAM SOTO PRESSLEY, AND ANNA MAMALA

David Westland
Westland & Bennett, P.C.
Hammond, Indiana